UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INDICTMENT NO.  CR413-28 |
| | ) | |
| v. | ) | |
| | ) | |
| SEAN MICHAEL CLARK, ET AL. | ) | |

GOVERNMENT'S COMBINED RESPONSE TO
PRETRIAL MOTIONS OF DEFENDANTS

Now comes the United States of America, by and through Edward J. Tarver, United

States Attorney for the Southern District of Georgia, and files this combined response to the

pretrial motions of defendants.

   1.    **Re:  Motions for Discovery and Inspection and Similar Motions [Docs 94,
           107, and 112] / Motion for Jencks Material [Doc 113] / Motions for
           Disclosure of Seized Evidence [Doc 105]**

   a.  The government has complied with the requirements of Fed. R. Crim. P. 16.  The

government has made available to defense counsel investigative reports, defendants' criminal

histories, and other documentary materials, as set forth in the government's certificates of

disclosure.  The government has made available the grand jury transcripts.

   b.  Physical items the government intends to use in its case-in-chief are maintained under

conditions necessary for the protection of the exhibits and chain of custody.  Times during which

counsel may inspect such items may be arranged by mutual agreement nearer to whatever trial

date is scheduled by the Court.  **Counsel may contact the undersigned at (912) 652-4422 to

arrange to inspect the government's evidence.**

   c.  Any and all matters contained in the government's discovery materials are subject to

presentation during the government's case-in-chief or during rebuttal

d.  The government does not oppose motions to preserve evidence or for the preservation of rough notes.  However, the government does not consent to making such materials discoverable unless a defendant makes a threshold showing of relevancy and need.  The government opposes those portions of any such motions directed at the notes of the prosecuting attorney.  Rule 16(a)(2) specifically excludes from pretrial discovery memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case.  The government's "work product" has long been exempt and protected from defense perusal.  United States v. Marth, 42 F.R.D. 432 (1967).

e.  The government does not control access to any of its witnesses.  Accordingly, the government will not produce witnesses for interviews by defense counsel.  United States v. Pepe, 747 F.2d 632, 655 (11th Cir. 1984).  The government will comply with all procedural requirements for notice of any expert witness it might call at trial.

f.  The government deems motions requesting statements of individuals not to be called as witnesses and requests for production of guideline sentencing information as outside the scope of discovery contemplated by Fed. R. Crim. P. 16.

**2.     Re:  Motions for Disclosure under LR 12.3 [Docs 93, 116]**

a.  Two defendants have moved for an order requiring the government to file a notice pursuant to Local Rule 12.3.  This rule provides:

**LCrR 12.3 Disclosure of Information and Witnesses.**

As soon as practicable after the defendant's notice, and in no event less than fourteen (14) days before trial (unless the Court directs otherwise), the attorney for the government shall serve upon the defendant, or his attorney, a written notice stating the names and

addresses of the witnesses and the substance of any direct or circumstantial evidence of prior acts of the defendant, specific instances of conduct, or criminal convictions of the defendant upon which the government intends to rely to establish the defendant's predisposition to commit the crime alleged.

b.  No defendant has filed a notice of entrapment defense pursuant to Local Rule 12.2 that would require the government's compliance with Rule 12.3 in response.

**3.      Re:  Motions for Notice of Intent to Use Evidence Pursuant to Rule 404(b) [Docs 90, 108, 114]**

All evidence contained in the discovery materials is considered intrinsic to the offenses charged.

**4.      Re:  Motions for Release of Brady Materials [Docs 89, 91, 106, 109, 111, 117] Motion for Early Disclosure of Criminal Histories [Doc 95]**

The discovery provided contains information which may be considered impeaching or exculpatory by the defendants.  Ten (10) days prior to trial the government will file a Brady-Giglio notice.  Criminal histories of witnesses the government expects to call at trial and any considerations extended to them will be set forth.

**5.      Re:  Motion for Extension of Time to Declare Case Complex [Doc 97]**

a.  The indictment charges six defendants with conspiracy in violation of 21 U.S.C. § 846 (Count One), maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) (Count Two), unlawful dispensation of controlled substances in violation of  21 U.S.C. § 841(a)(1) (Counts Three through Fifty-One), distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count Fifty-Two), conspiracy to launder monetary instruments in violation of 18 U.S.C. 1956(h) (Count Fifty Three) and a forfeiture allegation.  The length of the conspiracy spans from September 2009 until December 2011.

b.  To date, the United States has provided or made available to defendants 5 DVDs and materials seized from three computer hard drives containing thousands of pages of discovery, including DEA 6 reports, local law enforcement reports, copies of search warrants, search warrant affidavits, numerous grand jury transcripts, criminal histories of defendants, surveillance videos, numerous emails, medical records, and other items.

**Memorandum**

c.  The Speedy Trial Act requires a defendant's trial to begin within 70 days of his indictment or appearance before a judicial officer, whichever occurs later.  See 18 U.S.C. §3161 (c)(1).  Periods of delay resulting from various matters are automatically excluded from the computation of the 70 days.  See 18 U.S.C. §3161(h).  Any "period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government" is excludable if the court granted such continuance on the basis of findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," and the court "sets forth, in the record of the case, either orally or in writings, its reasons for [that] finding." 18 U.S.C. §3161(h)(7)(A).

d.  Section 3161(h)(7)(B) sets forth the factors the court may consider when determining whether to exclude time pursuant to Section 3161(h)(7)(A).  Where the court finds that "the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established," the court may exclude such time as necessary to serve the ends of justice. 18 U.S.C. §3161(h)(7)(B)(ii).

e.  In the case at hand, there are a number of factors that justify exclusion.  The indictment alleges criminal activity that spanned a significant time period and multiple locations. Additionally, the number of defendants, while not extraordinary, nonetheless includes persons who played a variety of roles in the conspiracy.  Considerable expert testimony will be elicited during the trial.   All of these factors, considered together, take this case out of the ordinary and justify the exclusion of time.

f.  The Government respectfully submits that, based on the sheer volume of discovery, the complexity of the case and the number of defendants, the ends of justice warrant designating this case complex case under the Speedy Trial Act and therefore does not oppose motions to have this case designated as complex under the Speedy Trial Act and excluding all time from computation under the Speedy Trial Act until further Order of this Court.

**6.      Re:  Motions to Adopt [Docs 92, 102, 110, 116]**

As they are directed to the discretionary conduct of the proceedings by the trial court, the government will neither oppose nor concur in motions to adopt the motions of co-defendants. The government does not waive any requirement under LCrR 12.1 requiring that supporting affidavits "shall be submitted" where factual allegations not supported by the existing record are relied upon.

**7.      Re: Motion to Sever [Doc 98]**

The government opposes severance of counts and/or defendants.

**a.  The Defendants Are Properly Joined Under Fed. R. Crim. P. 8(b)**

(1)  Rule 8(b) states that "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the

same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).

An analysis under Rule 8(b) of a motion to sever begins with the district court determining

through an examination of the face of the indictment whether joinder was appropriate.  See,

United States v. Morales, 868 F.2d 1562, 1568-69 (11th Cir.1989).  "Joinder of multiple

defendants is proper whenever there is a 'common thread' between the actions charged against

them."  United States v. Saget, 991 F.2d 702, 707 (11th Cir.1993).  "Rule 8(b) ... makes clear that

joinder of the defendants for trial is proper where the indictment charges multiple defendants

with a single conspiracy and also charges some of the defendants with substantive counts arising

out of the conspiracy."  United States v. Simon, 839 F.2d 1461, 1472 (11th Cir.1988); accord,

United States v. Alvarez, 755 F.2d 830, 857 (11th Cir.1985) ("Joinder under Rule 8(b) of the

Federal Rules of Criminal Procedure is proper where, as here, an indictment charges multiple

defendants with participation in a single conspiracy and also charges some but not all of the

defendants with substantive counts arising out of the conspiracy.").

    (2)  Through an application of these principles to the indictment, the Court should

conclude that joinder is proper in the case at bar.  The "common thread" linking the defendants is

the alleged drug conspiracy.  Morales, 868 F.2d at 1568-69.  Since the acts alleged in the various

counts are connected, in terms of common objective, mode of operation, and participants, joinder

is permissible.  See, United States v. Andrews, 765 F.2d 1491, 1496-97 (11th Cir. 1985) (joinder

proper where offenses were part of "series of transactions" which were facially similar, and there

was substantial overlap of participants who shared same objective and displayed common mode

of operation).

(3)  Since under Rule 8(b) the joinder of the defendants in this case is proper, the next question is whether a joint trial is permissible under the principles of Fed. R. Crim. P. 14.

### b.   The Defendants Are Not Subject to Any Prejudicial Joiner under Fed. R. Crim. P. 14

(1)  Rule 14 provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."  Fed. R. Crim. P. 14.  The general rule in conspiracy cases like this one is that "persons who are charged together should be tried together."  United States v. Cassano, 132 F.3d  646, 650-51 (11th Cir.1998) ("The general rule is that defendants indicted together should be tried together....  This rule is particularly applicable to conspiracy cases." ) (citation omitted); see also, United States v. Adams, 1 F.3d 1566, 1578 (11th Cir.1993)(quoting Saget, 991 F.2d at 707); Morales, 868 F.2d at 1571.

(2)  There is a strong preference in this Circuit for the joint trial of those jointly indicted. United States  v. Smith, 918 F.2d 1551 (11th Cir. 1990); United States v. Castillo-Valencia, 917 F.2d 494 (11th Cir. 1990).  It has been explicitly recognized that separate trials in complex cases clash with significant interests of judicial administration and economy:   "Because it was necessary to prove the existence of the criminal enterprise and underlying conspiracy with respect to each defendant, a substantial portion of the government's proof would necessarily have had to be repeated for each defendant who was granted a separate trial."  United States v. Kopituk, 690 F.2d 1289, 1318 (11th Cir. 1982).   Separate trials in the instant case would be

invitations to repeat and revisit before successive juries the largest portion of the government's evidence, and tantamount to prayers for inconsistent verdicts.

(3)  The preference for a joint trial of multiple defendants in conspiracy cases reflects the sound policy of joinder where charges may be proven with substantially the same evidence. United States v. Dorsey, 819 F.2d 1055, 1058 (11th Cir.1987).  District courts are called upon to balance the public's interest in judicial economy and efficiency with any prejudice that the defendant may suffer from a joint trial.  See, United States v. Cross, 928 F.2d 1030, 1037 (11th Cir.1991); Dorsey, 819 F.2d at 1058.

(4)  The government recognizes that although joinder is proper under Rule 8(b), a district court may order Rule 14 severance under two circumstances, when (1) there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or (2) a joint trial would prevent the jury from making a reliable judgment about guilt or innocence.  See, Zafiro v. United States, 506 U.S. 534, 539 (1993); United States v. Talley, 108 F.3d 277, 279-80 (11th Cir.1997).  "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."  Zafiro, 506 U.S. at 538-39.  Severance is appropriate, therefore, when a defendant demonstrates that he or she suffered a "substantial" or "compelling" prejudice to his or her right to a fair trial.  Zafiro, 506 U.S. at 540; United States v. Condon, 132 F.3d 655, 658 (11th Cir. 1998); Saget, 991 F.2d at 707; Dorsey, 819 F.2d at 1058.  "'Compelling prejudice' is demonstrated by a showing that the jury was unable to make an individualized determination as to each defendant."  Saget, 991 F.2d at 707.  Limiting instructions, however, "often will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539; Talley, 108 F.3d at 280.

8

(5)  Moreover, prejudice is <u>not</u> demonstrated when the evidence would be admissible at separate trials.  <u>See</u>, <u>e.g.</u>, <u>United States v. Windom</u>, 19 F.3d 1190, 1198 (7th Cir. 1994) ("[P]rejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts."); <u>United States v. Ballis</u>, 28 F.3d 1399, 1408-09 (5th Cir.1994)("No prejudice inures to the defendant where a severance of counts would not result in a segregation of evidence.").  As the Supreme Court reasoned:

> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.  Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability--advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. <u>Richardson v. Marsh</u>, 481 U.S. 200, 210 (1987); <u>see also</u>, <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993) (quoting  <u>Richardson v. Marsh</u>, 481 U.S. 200, 210 (1987)).

The Supreme Court has held that "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  <u>Zafiro</u>, 506 U.S. at 540.   The fact that one or more defendants may have a better chance at acquittal if tried separately does not alone entitle him to a severance.  <u>See</u>, <u>Cassano</u>, 132 F.3d at 651.

(6)  Likewise, the Eleventh Circuit has placed a heavy burden on a defendant who seeks to obtain a reversal on the basis of the denial of a severance motion:

> [A] showing of compelling prejudice must be made before a trial court's ruling will be viewed as an abuse of discretion.  A reviewing court must consider whether the jury could "individualize each defendant in his relation to the mass," that is, whether the jury could avoid cumulating the evidence against all of the defendants and could make individualized guilt determinations. The jury's ability

to reach different verdicts as to different defendants is one factor which weighs in favor of the jury's ability to make individualized determinations and against a finding of abuse in refusing severance.  United States v. Watchmaker, 761 F.2d 1459, 1476 (11th Cir.1990)(quoting in part Kotteakos v. United States, 328 U.S. 750, 773 (1946)) (citations omitted).

Clearly, the weight of authority is against severance in non-capital cases.

### c.      Cautionary Instructions Will Protect the Defendants From Any Prejudice

(1)  A court, in considering a severance motion, is constrained to consider whether less drastic measures, such as limiting instructions, will suffice to cure any risk of prejudice.  See Richardson v. Marsh, 481 U.S. 200, 209 (1987); Zafiro, 506 U.S. at  539.   It is noteworthy that the Eleventh Circuit, in a complex RICO case, found that the giving of limiting instructions where appropriate, and inquiring of the jurors individually whether they understood those instructions, mitigated against any compelling prejudice in a year long joint trial.  See, United States v. Starrett, 55 F.3d 1525, 1553 (11th Cir.1995).

(2)  In the case at bar, no defendant has demonstrated, consistent with any persuasive authority, that appropriate limiting instructions would fail to cure any potential prejudice arising from a joint trial.  The trial court can provide the following instruction:

> Each count of the indictment charges a separate crime against one or more of the Defendants.  You must consider each crime and the evidence relating to it separately.  And you must consider the case of each Defendant separately and individually.  If you find a Defendant guilty of one crime, that must not affect your verdict for any other crime or any other Defendant.

See e.g. Basic Instruction 10.4, Eleventh Circuit Pattern Jury Instructions, Criminal, 2010.

Limiting instructions of this kind usually suffice to cure any possibility of "spillover" prejudice.

Zafiro, 506 U.S. at 541.

WHEREFORE,  the Court should deny the motion for severance.

8.      **Re: Motions for Bill of Particulars [Docs 96, 101] / Motions for List of Witnesses [Docs 75, 104]**

Because of the extensive discovery the government has provided, the government opposes any requests for a bill of particulars and list of witnesses.  There can be no legitimate claim of surprise at trial.  The indictment is also reasonably circumscribed as to time and place so as to allow it to be pleaded in bar to prevent successive trials.  Therefore, there is no bona fide need for a bill of particulars or list of witnesses.  United States v. Draine, 811 F.2d 1419, 1421 (11th Cir. 1987).

9.  **Motion to Strike Surplusage [Doc 99]**

a.  Defendant Lizama has moved to strike the term "pill mill" from the indictment, claiming that it is irrelevant and prejudicial.  The indictment alleges, among other things, that the defendants conspired to "distribute and dispense . . . quantities of controlled substances, including oxycodone, . . . hydrocodone, . . . and alprazolam, . . . not for a legitimate medical purpose and not in the usual course of professional practice" in violation of 21 U.S.C. § 846. [Doc 3, p. 6]  The indictment further alleges that the defendants "prescribed more than 4 million milligrams of oxycodone," between February 2011 and May 2011, to "more than 480 'patients' who lived outside the state of Georgia." [Doc 3, p. 11]

b.  The indictment uses the term "pill mill" six times on four pages of the twenty-four page document. [Doc 3, pp. 5, 7, 8, 9]  The term first appears in the definition of "sponsor:" "[t]he term 'sponsor' in reference to the 'pill mill' community, is a person who pays for all expenses . . ." [Doc 3, p. 5]  The second appearance of "pill mill" in the indictment defines "pill mills" to mean "nominal pain management facilities [] which dispense[] controlled substances

without any legitimate medical purpose." [Doc 3, p. 7] In the other four instances, the

indictment does not define the term, but "pill mill" appears in context describing East Health

Center's alleged illegal dispensing of prescription pills. [Doc 3, p. 7, 8,9]

**Memorandum**

c. Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion,

the court may strike surplusage from the indictment or information." Rule 7(d) is "a means of

protecting the defendant against immaterial or irrelevant allegations in an indictment or

information, which may, however, be prejudicial." Fed. R. Civ. P. 7 Advisory Committee's Note.

District courts have the discretion to decide whether to strike surplusage from an indictment;

these rulings are reviewed for abuse of discretion. United States v. Awan, 966 F.2d 1415, 1426

(11th Cir. 1992). A motion to strike surplusage from an indictment should not be granted unless

it is clear that the allegations (a) "are not relevant to the charge," and (b) "are inflammatory and

prejudicial." Awan at 1427 (quoting United States v. Huppert, 917 F.2d f07, 511 (11th Cir.

1990)). "This is a most exacting standard." Id.

d. Two federal district courts denied defendants motions to strike the term "pill mill" as

surplusage under 7(d). See United States v. Hazelwood, No. 1:10 CR 150, 2011 WL 2565294, at

2, 24 (N.D. Ohio July 27, 2011). In Hazelwood, a district court in the Sixth Circuit denied a

motion to strike "pill mill" from an indictment alleging the defendants sold prescription pills to

online buyers without a medical purpose and not in the usual course of medical practice. See id.

at 2, 4. The Sixth Circuit uses a test for surplusage identical to the Eleventh Circuit: "[a] court

should grant a motion to strike surplusage 'only where it is clear that the language is irrelevant

and prejudicial.'" Id. at 21 (quoting United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974).

12

In Hazelwood, the court concluded the term "pill mill" is not much different than terms like "'drug organization,' 'drug house,' or 'stash house,'" that seek to "characterize the nature of [an] allegedly illegal operation." Id. at 24.  The government used "pill mill" in the indictment to support contentions that the defendant illegally prescribed hundreds-of-thousands of prescription pills, so "[a]lthough it may be prejudicial to [the defendant], it is not irrelevant." Id. at 24.

     e.  Similarly, a district court in the Tenth Circuit denied the defendants' motion to strike various provisions, including the term "pill mill," from an indictment alleging the defendants illegally dispensed prescription pills at their pain management facility without medical purpose and not in the usual course of medical practice.  See Memorandum and Order at 3-7, United States v. Schneider, No. 07-10234-MLB (D.Kan. July 15, 2008), Doc. 154; Memorandum in Support of Joint Motion to Strike, United States v. Schneider, No. 07-10234-MLB, 2008 WL 6939869 (D.Kan. May 16, 2008).  The defendants requested, among other things, that the court strike the phrases "by running what was, in essence, a 'pill mill' and a 'narcotics delivery system'" and "[the d]efendants . . . ran what was, in essence, a 'pill mill' and a 'narcotics delivery system.'" Id.  Although the court partially granted the defendants' motion, striking such incendiary phrases as "prior to becoming a doctor, [the defendant] was a butcher," the court did not address the "pill mill" question, implicitly refusing to strike the phrase "pill mill" from the indictment.  See Memorandum and Order at 3-7, United States v. Schneider, NO. 07-10234-MLB at 3-7 (July 15, 2008); But see Memorandum and Order, United States v. Schneider, No. 07-10234-MLB at 8 (D.Kan. Jan. 28, 2009) (Excluding the phrases "script doctor" and "pill mill" from trial under Fed. R. Evid. 403 as inflammatory rhetoric).

f.  On a similar issue, a district court in the Eleventh Circuit denied a defendant's motion to prohibit the government from saying "pill mill" during the trial of a case alleging conspiracy to dispense prescription pills at a pain management facility without medical purpose and not in the usual course of medical practice.  See United States v. Caroni, No. 3:10cr101/MCR, 2011 WL 4102343, at 1, 4 (N.D.Fl. Sep. 13, 2011).  The court noted that "pill mill" is "commonly used by laypeople to describe certain types of pain management clinics," and determined that there was "nothing inappropriate or unduly prejudicial about the phrase 'pill mill.'"  Id. at 4.

g.  "Pill mill" is a phrase often used by courts to describe medical facilities that make prescription drugs available to customers without any legitimate medical purpose.  See e.g., United States v. Joseph, 709 F.3d 1082, 1088 (11th Cir. 2013) ("A physician, his assistant, and a pharmacist convicted of violating the Act in connection with the operation of a "pill mill" argue that a jury instruction at their trial ran afoul . . .").  The Courts of Appeals used the term "pill mill" in at least seven cases since 1996 to describe illegal pharmaceutical dispensing operations similar to that alleged at East Health Center.  Id.; United States v. Huffman, No. 12-3213, 2013 WL 2923498, at 4 (6th Cir. June 14, 2013); United States v. Young, 481 F.App'x 769, 771 (3d Cir. 2012); United States v. McFadden, 187 F.App'x 290, 292 (4th Cir. 2006) ("pill-mill"); United States v. Sawaf, 129 F.App'x 136, 141 (6th Cir. 2005) ("pill-mill"); United States v. Russell, 142 F.3d 438, at 1 (6th Cir. 1998) ("The district court described this operation as a 'pill mill.'"); United States v. Leal, 75 F.3d 219, 221, 223 & n.1, 225 (6th Cir. 1996), abrogated by United States v. Kennedy, 107 F.App'x 518, 519-20 (6th Cir. 2004).  Likewise, district courts in the Eleventh Circuit used "pill mill" to describe operations illegally dispensing prescription pills at least five times since 2011.  United States v. Castronuovo, No. 10-80149-CR, 2013 WL

2329964, at 7 (S.D.Fl. May 28, 2013); United States v. Votrobek, No. 4:11-CR-022-RLV-WEJ,

2012 WL 6929276, at 2-4, 6-8, 14 (N.D.Ga. June 12, 2012); Nasworthy v. Tucker, No.

3:11cv388/RV/EMT, 2012 WL 4009312, at 5, 8 (N.D.Fl. Aug. 1, 2012); Caroni,

3:10cr101/MCR, 2011 WL 4102343, at 4; United States v. Shaygan, 661 F.2d 1289, 1291 n.2

(S.D.Fl. 2009), vacated and remanded by, United States v. Shaygan, 652 F.3d 1297 (11th Cir.

2011).

  h.  Here, the term "pill mill" does not prejudice the Defendants, because it is a descriptive

term used to characterize the Defendant's alleged actions that has one accepted legal and

colloquial definition-medical facilities illegally dispensing prescription drugs-exactly the actions

alleged against the defendants.  The indictment uses the terms "pill mill" or "pill mills" six times

on four pages of the twenty-four page indictment, and defines "pill mills" as a "nominal pain

management facilities . . . which dispense[] controlled substances without any legitimate medical

purpose."  [Doc 3, pp. 5, 7, 8, 9]  The term is frequently cited by the Courts of Appeals and

district courts, always in the same context; to describe medical facilities illegally dispensing

prescription drugs.  Defendant Lizama points out that the term is also often used by the news

media in this same context.  See Lizama Motion to Strike Surplusage 2.  The phrase is commonly

used to describe certain types of pain management facilities, and there is "nothing inappropriate

or unduly prejudicial about the phrase 'pill mill.'"  Caroni, No. 3:10cr101/MCR at 4.

  i.  Even if deemed prejudicial, the term "pill mill" is relevant to the charges against the

defendants, so it should not be stricken as surplusage.  Here, the government uses the term "pill

mill" to support allegations that the defendants conspired to "distribute and dispense . . .

quantities of controlled substances, including oxycodone, . . . hydrocodone, . . . and alprazolam . .

. not for a legitimate medical purpose and not in the usual course of professional practice," and that the defendants "prescribed . . . more than 4 million milligrams of oxycodone" between February 2011 and May 2011 to more than "480 'patients' who lived outside the state of Georgia."  [Doc 3, pp. 6, 11]  Although the term "pill mill" may be prejudicial to the defendants, it is not irrelevant.

### Conclusion

j.  In the Eleventh Circuit, courts strike surplusage if it is clearly both prejudicial and irrelevant. "Pill mill" is not unduly prejudicial to the defendant because it is a commonly accepted term with one definition used to describe the defendants' alleged actions.  The term "pill mill" is relevant to the charges against the defendants and should not be stricken as surplusage.

### 10.    Re:  Motion to Suppress Statements to Grand Jury [Doc 100]

a.  Defendant Lizama seeks to suppress grand jury statements made by her because "the information was compelled as a result of misinformation and misunderstanding of her rights and the nature of the case."  The United States moves this Court to deny the defendant's motion without a hearing because it is without merit.

### Facts

b.  Beginning in or about 2011, the Drug Enforcement Administration began conducting an investigation of East Health Center, an alleged pill mill in the Southern District of Georgia. During the course of the investigation, agents lawfully interviewed Adelaida Lizama. Subsequent to the interview, agents served Ms. Lizama with a federal grand jury subpoena.  Ms. Lizama thereafter requested the United States District Courts for the Southern District of Georgia to appoint her counsel, swearing under oath that she was unable to afford counsel.  (See, 4:11-mj-

086, Doc 1).  Prior to grand jury, this Court appointed Karen Dove Barr to represent her (See, 4:11-mj-086, Doc. 3).  Ms. Barr is an experienced criminal defense lawyer who has practiced many years before the United States District Courts in the Southern District of Georgia.  Prior to grand jury, Ms. Dove Barr and Ms. Lizama met and discussed the case.  Ms. Lizama freely and voluntarily entered into a proffer agreement with the United States government.  In this agreement, Ms. Lizama indicated a desire "to provide information to the United States Attorney's Office for the Southern District of Georgia."  The proffer letter outlined the agreement between the United States, Ms. Lizama.  (See, 4:13-cr-00028, Doc 100-8).  Ms. Lizama read over the agreement, understood it, and agreed to be bound by it.  (See, id., at 100-8, page 2 of agreement).  Ms. Lizama, affirmed via her signature that: "I have read this proffer agreement carefully and reviewed every part of it with my attorney.  I understand and voluntarily agree to it."  At **no** point did Ms. Lizama ever question the agreement, or disagree with any provision in the agreement.

c.  On or about December 6, 2011, Ms. Lizama, represented by counsel, appeared before the grand jury for the Southern District of Georgia.  (See, 4:13-cr-00028, Doc 100-1).  The grand jury foreperson administered the oath to Ms. Lizama.  Thereafter, Ms. Lizama swore under oath to the following (see grand jury testimony pages 31-33).

-that she entered into an agreement with the United States concerning her testimony;

-that she read the (proffer) agreement prior to testifying;

-that she had the advice of counsel with regard to entering into the agreement;

- that she understood her duty to tell the truth;

-that she understood that she was a potential target of the grand jury; and that could be charged for matters concerning her testimony;

17

-that she understood her right against self-incrimination;

-that she could recess and consult with her attorney at any point during the proceeding;

-that she understood all of her rights.

d.  Ms. Lizama, a college graduate, then provided testimony to the grand jury.  At **no** point did she ever appear confused; appear not to understand the agreement or her duty to tell the truth.  At no point did she ever ask for her attorney.  She freely, voluntarily, and knowingly answered questions before the grand jury.  (See, Document 100-1, *grand jury testimony pages 31-70)*.

e.  Subsequent to testifying before the grand jury, Ms. Lizama freely and voluntarily entered into a plea agreement with the United States.  She thereafter decided not to plead guilty, and hired her present defense lawyer- Julie Wade.  A new grand jury was empaneled; and they returned an indictment against Ms. Lizama and others.

**Summary of Defendant's Argument**

f.  In the defendant's motion to suppress grand jury statements, it appears the defendant argues that the statements made to the grand jury should be suppressed because Ms. Lizama purportedly did not understand her rights, as explained by the United States and her lawyer; and did not understand the proffer letter that she entered into.

**Summary of Government's Argument**

g.  The United States moves this Court to deny the motion to suppress statements made to the grand jury because they were freely, knowingly, and voluntarily made.

18

**Memorandum**

h.  The United States did not deprive Ms. Lizama of any constitutional rights.  Because there was no 5th Amendment violation, or any other constitutional violation, the grand jury statement should be admissible.[1]   While it is true that the right against self-incrimination extends to grand jury proceedings, to be protected the witness must assert that right specifically.  Thus, a witness's answers are not "compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his [her] valid claim of privilege."  <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984); <u>United States v. Vangates</u>, 287 F.3d 1315, 1320 (11th Cir. 2002).  Further, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not "compelled" her to incriminate herself.  <u>Id.</u>

i.  In the case at hand, Ms. Lizama, a college graduate, who was represented by counsel, advised the United States of her intent to cooperate and testify in the grand jury.  Ms. Lizama affirmed her understanding of the proffer agreement, by signing the agreement.  In grand jury, federal prosecutors told Ms. Lizama that she was a target.  She swore she understood her rights and the consequences of her testimony.  Her new affidavit, attached to the motion, is merely an attempt by her to "unscramble the scrambled egg."

j.  The defense argues that the proffer letter was inadequately explained to the defendant; and therefore any statements made to grand jury should be suppressed.  This argument is also without merit.  The Supreme Court has held that the protections under Rule 410 can be waived as

---

[1]The defendant appears to argue that Ms. Barr's representation of Ms. Lizama was inadequate and therefore the statements should be suppressed via the exclusionary rule.  The United States submits this issue is wholly without merit.  The exclusionary rule does not apply to private attorneys.  It is a rule designed to address constitutional violations by government agents.  Ms. Barr was not and is not a government agent, therefore this Court should reject the defendant's argument.

long as there is no "affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily." United States v. Mezzanatto, 513 U.S. 196, 210 (1995). Because proffer agreements are legal agreements between two parties, courts have almost uniformly turned to the law of contracts when addressing legal issues that arise from them. "Proffer agreements are contracts, and their 'terms must be read to give effect to the parties intent.' " United States v. Raisley, 466 F. App'x 125, 130 (3d Cir. 2012) (quoting United States v. Hardwick, 544 F.3d 565, 570 (3d Cir. 2008)); United States v. Yellow, 627 F.3d 706, 708 (8th Cir. 2010) (finding that plea agreements are contractual and therefore should be interpreted by "general contractual principles") (quoting United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir. 2005)); United States v. Chiu, 109 F.3d 624, 625 (9th Cir. 1997) (applying contract principles to the interpretation of a proffer agreement and stating that the court should review alleged violations of a proffer agreement de novo); United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998).

k.  When interpreting proffer agreements as contracts, the court must "try to discern the intent of the parties 'as expressed in the plain language of the agreement when viewed as a whole.' " United States v. Taylor, 258 F.3d 815, 819 (8th Cir. 2001) (emphasis omitted) (quoting United States v. Kelly, 18 F.3d 612, 616 (8th Cir. 1994) (discussing plea agreements)).  Courts have also applied the common contractual inference: "that which is not included, is excluded." United States v. Hill, 643 F.3d 807, 876 (11th Cir. 2011); see also In re Celotex Corp., 487 F.3d 1320, 1334 (11th Cir. 2007) ("The doctrine of *expressio unius est exclusio alterius* instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded.") (internal quotations and citation omitted).

l.  In the case at hand, the evidence demonstrates that the proffer and grand jury testimony was knowingly given.  While it is true that, "like any contract, proffer agreements must have adequate consideration to support the promises stated therein," the proffer agreement in the case at hand had adequate consideration.  The government extended consideration to Ms. Lizama in a number of ways.  The United States agreed to meet with her.  Time is consideration.  The United States had no mandate to meet with her, but instead took time out of the day to meet with her and to give her an opportunity to provide her side of the story.  DEA agents, who could have been investigating other matters, took time out their day to meet with Ms. Lizama.  See e.g.,  United States v. Webb, 2012 WL 4458238 (3rd Cir. 2012); United States v. Parro, 302 F.2d 206 (SDNY 2004)(time is consideration).  Additionally, the United States agreed to limit the use of the testimony, assuming it was truthful.  This too is consideration.  Finally, the government agreed to consider her testimony and her cooperation in recommending a proposed plea.  In fact, the parties entered into a written plea agreement, but Ms. Lizama chose not to proceed with it.

m.  The exclusionary rule is not the proper remedy because there was no government mis-conduct.  It is well settled that the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 702 (2009).  The Court's rationale for this decision was tethered to several guideposts, namely: (1) "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence,'" Id.. at 700 (quoting Leon, 468 U.S. at 909); (2) "the benefits of deterrence must outweigh the costs," id. at 700; (3) "the extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct," id. at 701; (4) "the pertinent analysis of deterrence and culpability is

objective, not an inquiry into the subjective awareness of arresting officers," <u>id</u>. at 703 (quotations omitted); (5) "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not `pay its way,' " <u>id</u>. at 704.  In footnote four of the opinion, the Court suggests that merely negligent conduct is insufficient to invoke the exclusionary rule because it provides only a marginal deterrent effect. <u>See id.</u> at 702 n.4.

**Conclusion**

n.  The exclusionary rule should not apply because there was no government misconduct, no constitutional violation, and no need to deter others from similar behavior.  The United States will use any evidence produced by Ms. Lizama pursuant to the proffer agreement in a manner that is consistent with the terms of the agreement.  The defendant's motion to suppress should be denied.

**11.  Re: Motion to Dismiss (Selective Prosecution) [Doc 124]**

a.  Defendant Sean Michael Clark has moved to dismiss the indictment claiming he "is being selectively prosecuted in violation of federal equal protection clause and due process guarantees."  [Doc 124, p. 4]

**Statement of Facts**

b.  Sean Michael Clark and five co-defendants were named in a fifty-three count indictment charging conspiracy, maintaining a drug involved premises, unlawful dispensation of controlled substances, distribution of controlled substances, and conspiracy to launder money in connection with an allegedly "pill mill" known as East Health Center which formerly operated in Garden City, Georgia.

c.  On April 11, 2013 Nuvest, LLC pleaded guilty to maintaining the clinic, East Health

Center in Garden City.  See United States v. Nuvest, LLC, CR 413-047.  As part of the plea

agreement, Nuvest agreed to forfeit $2,000,000 in exchange for forbearance of further

prosecution of the company and its officer, Louis Trematerra for offenses related to, among other

things, East Health Center.[2]

**Memorandum**

d.  The United States Attorneys retain "broad discretion" to decide whom to prosecute.

Wayte v. United States, 470 U.S. 598, 607 (1985).  They have this latitude "because they are

designated by statute as the President's delegates to help him discharge his constitutional

responsibility to 'take Care that the Laws be faithfully executed.'"  United States v. Armstrong,

517 U.S. 456, 464 (1996) (quoting U.S. Const Art. II § 3).  Thus, a "presumption of regularity"

supports prosecutorial decisions, and "in the absence of clear evidence to the contrary, courts

presume that they have properly discharged their official duties."  Id. (quoting United States v.

Chemical Foundation, Inc., 272 U.S. 1, 14-25 (1926)).  In the ordinary case, "the decision

whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests

entirely in [the prosecutor's] discretion."  Id. (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364

(1978)).

e.  This discretion is not unfettered, and must comport with constitutional constraints.

Under the equal protection component of the Fifth Amendment's Due Process Clause, the

---

[2]The government construes that Clark believes he is being discriminated against on the
basis of wealth.  According to Clark's motion, the "only basis for discrimination is the fact that
there is superiority in funds" [Doc 124, p. 7]

decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).

     f.  "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards,' " under which the defendant must prove "that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' " Armstrong, 517 U.S. at 465, 116 S.Ct. at 1487 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). "[T]o establish selective prosecution, a defendant must show that [his] prosecution was predicated on a constitutionally impermissible motive, such as on the basis of race or religion, or in retaliation for [his] exercise of constitutional rights." United States v. Ndiaye, 434 F.3d 1270, 1288 (11th Cir. 2006).  The defendant must produce "clear and convincing evidence" that the prosecutor violated the two components of a selective-prosecution case.  United States v. Smith, 231 F.3d 800, 808 (11th Cir. 2000).  This is a demanding burden.  Id.

     g.  The discriminatory effect prong of this test requires that "similarly situated individuals were not prosecuted." Smith, 231 F.3d at 809.  [A] "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant. Id. at 810.  Defendant makes no showing in support of his motion other than the broad averment that " the government has acted improperly, motivated by the large cash seizure, which they have

obtained by virtue of the forfeiture and the plea agreement entered into with the ringleader and mastermind of "alleged" criminal activity. [Doc 124, p. 7]  The defendant's belief that Louis Trematerra was the "mastermind" of the pill mill operation or that "[w]ithout his organizational skills . . . the scheme would not have come into being" [Doc 124, pp. 6-7] does not constitute admissible evidence, let alone proof of this fact.

**Conclusion**

h.  The Defendant's motion to dismiss is without merit and fails to demonstrate that the United States Attorneys' decision to prosecute had a discriminatory effect on the defendant or was motivated by a discriminatory purpose.  The Defendant Clark has failed to provide clear and convincing evidence (or indeed any evidence) to support the claim that the United States Attorneys violated the equal protection clause by selectively prosecuting. The court should deny the Defendant's motion to dismiss  because it fails to overcome the prosecutorial presumption of regularity with clear and convincing evidence that the prosecution of Clark is motivated by a discriminatory purpose and produced a discriminatory effect.  An evidentiary hearing is not automatically required; instead, the defendant must present facts "sufficient to create a

reasonable doubt about the constitutionality of a prosecution...." <u>United States v. Silien</u>, 825

F.2d 320, 322 (11th Cir. 1987).

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

*s/ Karl I. Knoche*

Karl I. Knoche
Assistant United States Attorney
Georgia Bar No. 426624

*s/ E. Greg Gilluly, Jr.*

E. Greg Gilluly, Jr.
Assistant United States Attorney
Tennessee Bar No. 019397

P.O. Box 8970
Savannah, Ga.  31401
(912) 652-4422

26

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 7th day of July, 2013.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

***s/ Karl I. Knoche***

Karl I. Knoche
Assistant United States Attorney
Georgia Bar No. 426624

Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422