UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | INDICTMENT NUMBER: |
| ) | CR 4:13 – 028 |
| DR. NAJAM AZMAT, ) | |
| ) | |
| Defendant.   ) | |

## NAJAM AZMAT'S MOTION *IN LIMINE*

COMES NOW, Najam Azmat, Defendant herein, by and through the undersigned counsel, and files this Motion *in Limine* and moves this Court to exclude from the trial of this matter any and all evidence relating to the following:

1) the administrative sanctions against Dr. Azmat by either the Georgia Medical Board, or the Kentucky Medical Board,

2) a *qui tam*, false claims case filed against Dr. Azmat related to his employment at Satilla Regional Medical Center more than 7 years ago, *see United States ex.rel. Rogers, v. Azmat, et.al.*, CV 507-92 (LGW) (S.D.Ga. 2010),

3) any alleged other crimes, wrongs, or acts by Dr. Azmat, other than what is charged in the Indictment, specifically, any alleged misconduct arising out of Dr. Azmat's pain management practice in Lexington, Kentucky in 2011 and 2012, and

4) any hearsay statements regarding the reason pharmacies were not filling the prescriptions of either the East Health Clinic or Dr. Azmat.

1

# I. <u>INTRODUCTION</u>

Dr. Azmat was arraigned in this case on March 25, 2013. *See* Doc. # 49. On May 24, 2013, Dr. Azmat filed a Notice of Request for Notice of Evidence of Other Crimes, Wrongs or Acts Pursuant to Fed.R.Evd. 404(b) ("Notice"), Doc. # 108, requesting that the Government provide him "with notice of any and all evidence of other crimes, wrongs or acts which it may introduce at any trial of this action." Doc. # 108, p. 1. Dr. Azmat was later arraigned on the Superseding Indictment on August 19, 2013, although he waived arraignment. *See* Doc. # 175. The Government has not provided any Rule 404(b) Notice or any Notice pursuant to the Local Rule.

The Superseding Indictment charges, among other things, a conspiracy arising out of the East Health Center in Garden City, Georgia, and alleges that the conspiracy continued until December 2011. *See* Doc # 56, paragraphs 22-23.

The East Health Center ceased operation May 26, 2011. Certain of the conspirators then moved to Atlanta until that clinic was shut down in June 2011.

Dr. Azmat was fired by East Health Center on or about March 18, 2011. He was employed at a pain management clinic in Lexington, Kentucky in 2011 and early 2012. No one related to EHC was related in any fashion to the pain management clinic in Kentucky. However, just before Christmas, the government provided defense counsel an interview report that was conducted in November 2013 of the owner of the Lexington, Kentucky - clinic, Warren Gold. The focus of that interview was Mr. Gold's interaction with Dr. Azmat in Kentucky.

Out of an abundance of caution, Dr. Azmat moves *in limine* as a result of that recently disclosed interview of Mr. Gold and the exhibits introduced by the Government at his detention hearing on February 28, 2013. *See* Doc. # 20. During the hearing, the Government introduced (1) a letter from the Georgia Composite State Board of Medical Examiners, dated September 23, 2008; (2) an article from the Florida Times-Union, dated 19, 2012; (3) an Emergency Order of Suspension from the Commonwealth of Kentucky Board of Medical Licensure, dated February 16, 2012; and (4) an article from Kentucky.com, dated February 17, 2012. *Id*. Finally, Dr. Azmat moves in limine to prevent hearsay statements by patients of East Health Clinic as to what the pharmacists told them regarding their prescriptions.

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. The Kentucky Evidence is not Charged in the Indictment and the Government Has Not Provided Any 404 (b) Notice or Notice Pursuant to LCrR 16.2

There is no mention of the word Kentucky in the Superseding Indictment (other than that patients at EHC were from Kentucky) and all of the patients in question in the substantive counts were seen by Dr. Azmat at EHC in February and March 2011. Each of the alleged co-conspirators knew one another in Florida And, as set forth above, Dr. Azmat was fired from EHC in mid-March 2011 and none of the alleged co-conspirators worked for, or were associated with his employment in Kentucky. There can be no credible argument that the Kentucky conduct is somehow charged in the indictment. The interview report of Mr. Gold, who is under indictment in the Middle District of Florida, *United States v. Gold*, Case No. 8:13- CR – 48, is focused exclusively on Dr. Azmat's

3

dealings with patients in Kentucky and is entirely unrelated to the charged offenses in the Southern District of Georgia.

Pursuant to Local Criminal Rule 16.2, within 20 days of arraignment, the prosecutor is instructed to provide a defendant with a written notice of any evidence of other wrongs or acts which the government intends to offer through Rule 404 (b), or under the inextricably intertwined theory. "Because **the notice requirement serves as condition precedent to admissibility of 404(b) evidence**, the offered evidence is inadmissible if the court decides that the notice requirement has not been met." Fed.R.Evid. 404 Notes (1991 Amends.) (emphasis added); *accord United States v. Bradley*, 644 F.3d 1213, 1273 (11th Cir. 2011) (quoting Fed.R.Evid. 404 Notes (1991 Amends.)).

The Government has not provided the required notice of any direct or circumstantial evidence of other crimes, wrongs, or acts of Dr. Azmat within twenty (20) days of arraignment, in contravention of L.Cr.R. 16.2, nor has it filed any Rule 404 (b) notice. And, importantly, the Government has not provided the required notice that the Kentucky evidence is somehow inextricably intertwined with the evidence at the EHC. The evidence should be excluded.

Admission of evidence of other crimes, wrongs, or acts without proper notice can constitute reversible error. *See United States v. Carrasco*, 381 F.3d 1237, 1243 (11th Cir. 2004) (reversing the defendant's conviction where, in its rebuttal at trial, without having provided notice under Rule 404(b), the government presented testimony from a co-defendant that the defendant had operated a tire business which served as a front for a

drug operation, that the co-defendant had purchased cocaine from the appellant on at least a dozen occasions, that the appellant had been witnessed adding cutting agents to drugs and that the appellant had given money to the witness for cocaine on at least three occasions).

Accordingly, any evidence of Dr. Azmat's employment in Kentucky, or any other alleged crimes, wrongs, or acts should be excluded.

**B. Evidence Related to the Administrative Actions and Lawsuit are Not Relevant**

Any evidence that Dr. Azmat was sanctioned by either the Georgia Medical Board, or the Kentucky Medical Board is not relevant to the question of whether Dr. Azmat committed the charged offenses. First, action by medical boards is governed by completely different standards than that necessary for a criminal conviction. The standard for the Kentucky Board's conclusions of law was "a preponderance of evidence in the record." KRS § 13B.090(7). And, in front of the Kentucky Medical Board, Dr. Azmat invoked his Fifth Amendment right to remain silent. http://www.state.ky.us/agencies/kbml/finalorders/32661.pdf. Moreover, as detailed in the Kentucky Order, its sanction against Dr. Azmat is a non-final Order.

As for the lawsuit filed against Dr. Azmat, that lawsuit was filed in 2007 for injuries and acts that allegedly took place in 2005 and 2006 and relates to the defendant hospital's submission of false claims to the government. *See United States ex.rel. Rogers, v. Azmat, et.al.*, CV 507-92 (LGW), Amended Complaint, Doc # 56. Accordingly, the evidence related to the qui tam complaint is not relevant to the charged offenses.

5

Furthermore, the alleged evidence is of no or minimal relevance since the suspension of Dr. Azmat's license in Kentucky occurred after the conduct charged in the Indictment. *See Schneider v. Revici*, 817 F.2d 987, 992 (2d Cir. 1987) ("We have difficulty in viewing a license suspension that occurred after the claim for fraud arose as probative of whether [the defendant] possessed the fraudulent intent necessary to establish common law fraud"); *Ulibarri v. City & County of Denver*, NO. 07-CV-1814-ODS, 2012 WL 426605, *3 (D.Colo., February 10, 2012) (holding, in wrongful death action, that "[t]he Board of Nursing's actions [against a defendant nurse] cannot establish Defendants' knowledge because those actions occurred after [the decedent's] suicide").

**C. <u>The Evidence Should be Excluded Under Rule 403 and 404</u>**

The extrinsic evidence should not be admitted pursuant to the careful weighing required under Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. The Rule serves "'to exclud[e] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *United States v. Hands,* 184 F.3d 1322, 1328 (11th Cir. 1999) (quoting *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991)). As the Advisory Committee has stated, "[t]he case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance." Fed.R.Evid. 403 Notes (1972 Proposed Rules). "These circumstances entail risks which range all the way from inducing decision on a purely

6

emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme." *Id*. "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403." Fed.R.Evid. 404 Notes (1972 Proposed Rules) (quoting Slough and Knightly, *Other Vices, Other Crimes*, 41 Iowa L.Rev. 325 (1956)).

Admitting evidence that Dr. Azmat's medical licenses have been suspended, would clearly cause substantial "unfairly prejudice" under Rule 403. "Unfair prejudice" is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 Notes (1972 Proposed Rules). "[A] defendant must be tried for what he did, not for who he is." *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977). Such evidence would create fertile grounds for the jury to improperly convict Dr. Azmat on an improper basis, whether from emotion or a need to punish, rather than the evidence relating to the charges against him.

The alleged extrinsic evidence would also be unfairly prejudicial for the reason that "[e]vidence that tend[s] to erode [a defendant's] credibility and to prejudice the jury against him, therefore, could have… a substantial—perhaps overpowering—impact on the jury's deliberations." *Hands,* 184 F.3d at 1332 (citing *United States v. Crutchfield*, 26 F.3d 1098, 1103 (11th Cir. 1994); *United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir. 1999)).

Here there is a real danger that the jurors may simply defer to the administrative body, either in Georgia or Kentucky, even though they have not rendered a final decision.

In addition to unfair prejudice, admission of the alleged extrinsic evidence sufficient to prove that the alleged other crimes, wrongs, or acts occurred would delay trial and waste the time of the Court, the parties, and the jury. In essence, the evidence related to the Kentucky employment and administrative sanction would amount to a trial within a trial with substantial risk of confusion of the issues and waste of the court's time on collateral issues, unrelated to EHC.

The alleged extrinsic evidence would add little here. The Government's Superseding Indictment alleges 52 Counts that are complex legally and factually. The proof should be confined to the charging document.

**D. The Statements of Pharmacists to Patients is Hearsay**

Patients of EHC had difficulty getting their prescriptions filled. Apparently, the patients would on occasion be informed by pharmacists that they would not write prescriptions for Dr. Azmat because of problems he had in other litigation, that he was blackballed, or similar such statements. Those statements are hearsay under Fed.R.Evid. 801 (c) and should be excluded.

WHEREFORE, for the reasons set forth herein, Defendant Najam Azmat, respectfully requests that the Court grant his Motion *in Limine*.

                  **s/ Thomas A. Withers, Esq.**
                  Thomas A. Withers, Esq.
                  Georgia Bar Number: 772250
                  Attorney for Dr. Najam Azmat

GILLEN, WITHERS & LAKE, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Facsimile: (912) 629-6347
E-Mail: Twithers@gwllawfirm.com

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

This 5th day of January, 2014.

             **s/ Thomas A. Withers, Esq.**
             Thomas A. Withers, Esq.
             Georgia Bar Number: 772250
             Attorney for Dr. Najam Azmat

GILLEN, WITHERS & LAKE, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Facsimile: (912) 629-6347
E-Mail: Twithers@gwllawfirm.com