UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | No. CR413-028 |
| ) | |
| NAJAM AZMAT, ) | |
| Defendant. ) | |

### DEFENDANT NAJAM AZMAT'S MOTION
### FOR JUDGMENT OF ACQUITTAL
### PURSUANT TO FED. R. CRIM. P. 29

COMES NOW Defendant Najam Azmat and moves for judgment of acquittal pursuant to Fed. R. Crim. P. 29 on counts 2 through 50 and 52 of the superseding indictment and shows the Court the following:

### I. BACKGROUND

Dr. Najam Azmat, is a medical doctor licensed by the State of Georgia. He holds a Drug Enforcement Administration (DEA) license to prescribe controlled substances. He does not hold a DEA license to dispense controlled substances.

Count 1 of the Superseding Indictment claims that the defendants conspired to **distribute and dispense**, and caused to be distributed and dispensed, Schedule II, III, and IV controlled substances. [Doc 156-Pgs 6-11]

Counts 2 through 50 assert that Dr. Azmat, aided and abetted by his co-

1

defendants, "did, outside the usual course of professional practice as a medical doctor and without legitimate purpose relating to the practice of medicine, knowingly, intentionally and unlawfully **dispense**" Schedule II, III, and IV controlled substances on various occasions from February 21, 2011, to March 15, 2011, all in violation of 21 U.S.C. § 841(a)(1). [Doc 156-Pgs 11-15][emphasis added]. Count 52 contends that Dr. Azmat and his co-defendants conspired to launder money, with the specified unlawful activity being "the **dispensation** of Schedule II, III, and IV controlled substances." [Doc 156-Pg 16] [emphasis added].

Dr. Azmat presaged this argument when the original Indictment was returned. Dr. Azmat was charged in Count Two with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1). [Doc 3-Pg 12]. That count charged Dr. Azmat with knowingly and intentionally opening and maintaining a place known as East Health Center for the purpose of "**dispensing** Schedule II, III and IV controlled substances… in violation of Title 21, United States Code, Section 856(a)(1)." [Doc 3-Pg 12] [emphasis added].

Dr. Azmat moved to dismiss that charge for failure to state a claim. [Doc 115-Pgs 1-5] Dr. Azmat argued that the plain language of 21 U.S.C. § 856 makes it unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, **distributing**, or using

2

any controlled substance…" 21 U.S.C. § 856(a)(1) (emphasis added). Accordingly, the place must have been operated or maintained "'for the purpose of manufacturing, distributing, or using any controlled substance.'" United States v. Garcia, 405 F.3d 1260, 1271 (11th Cir. 2005) (quoting United States v. Pineiro, 389 F.3d 1359, 1367 (11th Cir. 2004)). [Doc 115-Pgs 1-5]

Count Two, however, charged an offense – maintaining a place to **dispense** controlled substances – that is not found in Section 856. Count Two was accordingly deficient for failure to allege an essential element of the statute (manufacturing, distributing or using, as opposed to dispensing). [Doc 115-Pgs 1-5] The government did not respond to Dr. Azmat's motion, but rather, realizing the plain flaw in their charge, returned a Superseding Indictment that eliminated the Section 856 charge. [Doc 156].

The Section 841 charges here suffer from the other side of the "distribution" versus "dispensation" distinction – a distinction with a plain statutory difference for each of the charges here alleges that Dr. Azmat "dispensed" controlled substances as opposed to "distributed" controlled substances. The government failed to produce any evidence that Dr. Azmat "dispensed" controlled substances. For the reasons set forth herein, the grant of judgment of acquittal under Federal Rule of Criminal 29 in favor of Dr. Azmat is proper.

## II. ARGUMENT AND CITATION OF AUTHORITY

Each of the charges in question ground themselves on the **dispensing** of Schedule II, III, and IV controlled substances. Since Dr. Azmat was not authorized to "dispense" and the government has not proven that he dispensed any medication, Counts 2 through 51 are fatally defective. Count 52, the money laundering conspiracy, should also be dismissed since the specified unlawful activity is dispensation.

Federal Rule of Criminal Procedure 29 itself provides, in relevant part, that:

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

Fed.R.Crim.P. 29(a). In deciding a motion for judgment of acquittal pursuant to Rule 29, a district court must "determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Grigsby**,** 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987); citing Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781 (1979)).

Stated another way, the test on a motion for judgment of acquittal is "whether a reasonable jury could conclude that the evidence established guilt beyond a reasonable doubt." United States v. Russo, 717 F.2d 545, 549 (11th Cir. 1983) (citing United States v. Pierre, 688 F.2d 724, 725 (11th Cir. 1982); United States v. Roper, 681 F.2d 1354, 1359 (11th Cir. 1982)). "If a reasonable jury would necessarily entertain a reasonable doubt as to the defendant's guilt, the conviction must be reversed." Id. (citing United States v. Marx, 635 F.2d 436, 438 (5th Cir. 1981)).

**A. Counts 2 through 50 are fatally defective.**

Counts 2 through 50 charge Dr. Azmat with a violation of 21 U.S.C. § 841(a)(1), which provides as follows:

> Except as authorized by this subchapter, it shall be unlawful for a person knowingly or intentionally –
> (1) to. . .**distribute, or dispense** . . . a controlled substance. . . .

21 U.S.C. § 841(a)(1) (emphasis added). Title 21 defines "dispense" as follows:

> The term "dispense" means **to deliver a controlled substance to an ultimate user . . . by, or pursuant to the lawful order of, a practitioner,** including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user . . . .

21 U.S.C. § 802(10) (emphasis added). Title 21 defines "distribute" as follows:

> The term "distribute" means to deliver **(other than by administering or**

5

>    **dispensing)** a controlled substance . . . The term "distributor" means a person who so delivers a controlled substance. . . . .

21 U.S.C. § 802(11) (emphasis added).

The government has proven that Dr. Azmat "prescribed" controlled substances. The government has not proven that he "dispensed" controlled substances beyond a reasonable doubt. The plain language of the statute demonstrates that "prescribe" and "dispense" are distinct ways in which the statute can be violated. The statute itself defines "dispense" as:

>    to **deliver** a controlled substance to an ultimate user . . . by, or pursuant to the lawful order of, a practitioner, including the prescribing **and** administering of a controlled substance **and** the packaging, labeling **or** compounding necessary to prepare the substance for such delivery . . .

21 U.S.C. § 802(10) (emphasis added). The Eleventh Circuit Court of Appeals and other courts have expressly recognized that "'dispense' by statutory definition is **delivery** performed by a practitioner." United States v. Steele, 117 F.3d 1231, 1235 (11th Cir. 1997), overruled on other grounds in United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (affirming the defendant's conviction for knowingly and intentionally dispensing controlled substances in violation of Section 841(a)(1), finding that "because [the defendant] was acting as an agent of a registered pharmacy, he was authorized to dispense controlled substances in the course of his professional practice as a pharmacist, **but only pursuant to a prescription issued by a**

**practitioner**") (emphasis added); see also United States v. Genser, 710 F.2d 1426, 1431 (10th Cir. 1983) ("To prove the crime of dispensation, the government must show knowing or intentional **delivery** of a controlled substance by a practitioner") (emphasis added) (citing United States v. Bartee, 479 F.2d 484, 488 (10th Cir. 1973); United States v. Varma, 691 F.2d 460, 462 (10th Cir. 1982); United States v. Rogers, 609 F.2d 834, 839 (5th Cir. 1980)). Thus, to "dispense" a controlled substance, a practitioner has to deliver the controlled substance, i.e. by prescribing **and** administering it **and** packaging, labeling, or compounding it. "Administer" refers "to the direct application of a controlled substance to the body of a patient or research subject . . . ." 21 U.S.C. § 802(2). There is no evidence in this case that Dr. Azmat "delivered" any controlled substances through "administering" controlled substances to any patient or research subject, or that he "packaged," "labeled," or "compounded" any controlled substance.

Not only does the statute define "distribute" and "dispense" as separate and distinct ways to violate Section 841, but also the comprehensive regulatory scheme for prescription drugs demonstrates the same. One commonly thinks of physicians as prescribing drugs and pharmacists as dispensing drugs; "dispensing" connotes the packaging and the delivery of a prescription drug to a patient. The DEA's regulations contemplate such a scheme for Schedule II, III, and IV drugs. There are rare occasions

7

where a practitioner may directly dispense Schedule II, III, or IV controlled substances – for instance, in drug treatment programs or for acute withdrawal symptoms. See 21 U.S.C. § 829(a), (b); see also 21 C.F.R. § 1306.07 (describing controlled substance dispensation by physicians in drug treatment programs and acute care situations); 21 C.F.R. § 1306.11(a), (b) (explaining exceptions for Schedule II drugs); 21 C.F.R. § 1306.21(a), (b) (explaining exceptions for Schedule III, IV drugs).

In typical situations, "[a] prescription for a controlled substance may be issued only by an individual practitioner" who is authorized by his state's licensing board and registered by the DEA. 21 C.F.R. § 1306.03(a). "A prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice. . . . or [a] registered institutional practitioner." 21 C.F.R. § 1306.06. Schedule II drugs may be dispensed by a pharmacist "only pursuant to a written prescription signed by a practitioner." 21 C.F.R. § 1306.11(a), (b). Schedule III and IV controlled substances carry similar requirements – i.e., that a pharmacist may dispense these drugs only pursuant to a practitioner's prescription, and the practitioner may dispense these drugs directly only upon meeting the requirements of Section 1306.07. 21 C.F.R. § 1306.21(a), (b).

Here, Dr. Azmat had a license to prescribe, but not a license to dispense. Counts 2 through 50 which charge that he dispensed the medication are fatally flawed. As a

result of the government's flawed allegations, the jury must necessarily entertain a reasonable doubt as to whether Dr. Azmat allegedly "dispensed" any controlled substances, and the grant of judgment of acquittal in Dr. Azmat's favor is appropriate.

The case law supports this contention as well as do the charging decisions of the government in this District. The seminal case which clarified that physicians who illegally dispensed and prescribed controlled substances could be prosecuted under Title 21 is the Moore case from the U.S. Supreme Court. Moore itself involved an indictment charging a physician with "the knowing and unlawful distribution and dispensation" of a controlled substance. Moore, 423 U.S. at 124. And Eleventh Circuit cases have noted that physicians have been charged with distributing, dispensing, or both. See, e.g., United States v. Joseph, 709 F.3d 1082, 1087 (11th Cir. 2013) (noting that indictment charged physician and physician's assistant with "dispensing or distributing controlled substances"); United States v. Bourlier, 518 Fed. Appx. 848 (11th Cir. 2013) (noting physician's conviction for dispensing); United States v. Ignasiak, 667 F.3d 1217, 1219 (11th Cir. 2012) (noting that physician convicted of "dispensing controlled substances")[1]; United States v. Baron, 284 Fed. Appx. 781, 782

---

[1] Ignasiak cited 21 U.S.C. '830(b)(3)(A)(ii) for the proposition that a "DEA-registered physician may dispense controlled substances so long as he does so 'for a legitimate medical purpose' and while 'acting in the usual course of his professional practice.'" Id. at 1228. It then observed that for conviction, the government must prove that a physician dispensed controlled substances in violation of these requirements. Id.

(11th Cir. 2008) (discussing sentencing appeal of physician who pleaded guilty to distributing controlled substances); United States v. Dicter, 198 F.3d 1284, 1287-88 (11th Cir. 1999) (noting physician's conviction for distributing controlled substances based upon doctor's selling prescriptions for narcotics); United States v. Hammond, 781 F.2d 1536, 1537 (11th Cir. 1986) (noting physician's conviction for distribution via prescribing controlled substances).

The indictment should have charged Dr. Azmat with distributing, not dispensing. Another court has given this explanation:

> The real issue . . . is the meaning of "dispense," which the statute defines as "deliver[ing] a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner . . ." 21 U.S.C. § 802(10) . . ."Practitioner" is defined as a "physician . . . registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research." 21 U.S.C. § 802(20) . . .The combined effect of these statutory definitions in the present context is to limit the meaning of "dispense" to delivery of controlled substances by a physician who is acting in the course of professional practice or research. The point is made explicitly in the regulations. See 21 C.F.R. § 1306.04(a). . .Delivery of controlled substances outside the course of professional practice or research would constitute "distributing," see 21 U.S.C. § 802(11). . ., an activity which violates § 841(a)(1) even if carried on by a registered physician.

---

But '830(b)(3)(A)(ii) never mentions dispensing; it defines the term "valid **prescri**ption."

United States v. Badia, 490 F.2d 296, 298 (2d Cir. 1973).[2] See United States v. Leigh, 487 F.2d 206 (5th Cir. 1973) (concluding summarily under § 802(10) that "a doctor who administers or prescribes a controlled substance is, for the purposes of the statute, dispensing it," and dismissing indictment against physician alleging distribution). And, as another court observed:

> By definition "dispense" expressly contemplates a "lawful order"; if the order is not such, the prescription is not lawful under 21 U.S.C. s 829. [Fn]. If the prescription is not lawful, the "practitioner" does not dispense; rather, under s 802(11), he "distributes"-that is, he effects delivery "other than by dispensing." [Fn]. In short, a "practitioner" who dispenses does not violate the Act.

United States v. Black, 512 F.2d 864, 866 (9th Cir. 1975) (citing 21 U.S.C. § 829(a); 21 C.F.R. § 306.04(a); Badia, 490 F.2d 296).

Indeed, in the last alleged pill mill case before this Court, Dr. Ly was charged with and convicted of prescribing and dispensing controlled substances. See United States v. Ly, CR 207-286 (S.D.GA). However, in that case the government proved that Dr. Ly was, indeed "dispensing" medication. Here, there is no such proof.

---

[2] Badia explained its belief that Congress included "dispense" in § 841(a)(1) "to compel physicians to become properly licensed"; if not, "a physician could then be convicted of unlawful dispensing." Id. at 298, n. 4. Upon a physician's licensing, illegal **prescri**bing could be prosecuted under a charge alleging distribution. Id.

In <u>United States v. Tighe</u>, 551 F.2d 18 (3d Cir. 1977), the defendant argued that he did not dispense a controlled substance because he did not "deliver [it] to an ultimate user. . ." since the user's prescriptions remained unfilled. <u>Id</u>. at 19. The court after some strained reasoning concluded that placing a prescription for controlled substance in the hands of the end user completes the offense of dispensing. <u>Id</u>. at 20.

Two things support the error of <u>Tighe</u>'s holding. First, <u>Tighe</u> equates "prescribe" with "deliver" in the applicable statutory definition. Substituting the former for the latter renders other language superfluous, to wit:

> The term "dispense" means to [prescribe] a controlled substance to an ultimate user . . . by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery. . . .

21 U.S.C. § 802(10). If "deliver" merely means to "prescribe," then there is no reason to provide that "dispense" includes prescribing and administering. Second, requiring possession of a controlled substance by the ultimate user is consistent with both its definition and the definition of "dispense." <u>See</u> 21 U.S.C. § 802(27). As the Eleventh Circuit has recognized, "[a]n 'ultimate user' is 'a person who has **lawfully obtained ... a controlled substance** for his own use or for the use of a member of his household,' 21 U.S.C. § 801(27), as by prescription from a practitioner." <u>Steele</u>, 147 F.3d at 1318 (emphasis added). At the very least, "dispense" requires prescribing and packaging or

12

administering a controlled substance. 21 U.S.C. § 802(10). "Administering" involves "direct application of a controlled substance to the body of a patient" by a practitioner or the "patient. . . at the direction and in the presence of the practitioner. . . ." 21 U.S.C. § 802(2).

Given the statutory definitions and framework, the government cannot prove that Dr. Azmat alleged "dispensed" controlled substances under the plain definitions of Title 21 beyond a reasonable doubt, and Dr. Azmat's Motion for Judgment of Acquittal on Counts 2 through 50 should be granted.

**B. Count 52 relies on the activity specified in counts 2 through 50, so it should also be dismissed.**

Count 52, which charges a money laundering conspiracy, describes the specified unlawful activity as "the unlawful dispensation of Schedule II, III, and IV controlled substances" – the conduct charged in counts two through 50. [Doc 156-Pg 16] Dr. Azmat did not violate Title 21's prohibition against dispensing controlled substances. Since no evidence shows that Dr. Azmat engaged in dispensation, the specified unlawful activity charged in the superseding indictment, insufficient evidence supports any conviction for money laundering conspiracy. See United States v. Medina, 485 F.3d 1291, 1300 (11th Cir. 2007). The Court should order judgment of acquittal on this charge, too.

13

**C. <u>Dismissal of Count 52 Is Appropriate Under Christo</u>**

The government has failed to present evidence sufficient to permit the jury to find Dr. Azmat guilty of alleged money laundering conspiracy in violation of 18 U.S.C. § 1956(h) beyond a reasonable doubt. In order to obtain a conviction for a money laundering conspiracy the government bears the burden of proving beyond a reasonable doubt that: (1) two or more persons agreed to commit a money laundering violation; and (2) that the defendant, knowing the unlawful plan, voluntarily joined the conspiracy. *See United States v. Martinelli*, 454 F.3d 1300, 1310 (11th Cir. 2006). In addition, the government must prove beyond a reasonable doubt that each defendant had a deliberate, knowing, specific intent to join the conspiracy. *See United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998).

Insufficient evidence has been presented to support any finding that Dr. Azmat allegedly conspired with any other persons to launder proceeds of any alleged specified unlawful activity. Furthermore, the government has failed to prove alleged money laundering conduct following, and sufficiently separate from, the underlying alleged over acts. Money laundering "must 'follow in time' the completion of the underlying transaction as an activity designed to conceal or disguise the origins of the proceeds." *United States v. Majors*, 196 F.3d 1206, 1212 (11th Cir. 1999) (citing *United States v. Dimeck*, 24 F.3d 1239, 1246 (10th Cir. 1994)). "Before the primary

14

offense of money laundering can occur, the underlying criminal activity must be complete, generating proceeds to be laundered." *Majors*, 196 F.3d at 1212 n. 12 (citing *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997)).

"Congress aimed the crime of money laundering at conduct that **follows in time** the underlying crime rather than to afford an alternative means of punishing the prior `specified unlawful activity." *United States v. Edgmon*, 952 F.2d 1206, 1214 (10th Cir. 1991) (emphasis added); *accord United States v. Savage*, 67 F.3d 1435, 1442 (9th Cir. 1995) (describing proceeds as "funds obtained from prior, separate criminal activity"), *cert. denied*, 516 U.S. 1136 (1996). Distributing the fruits of a crime to co-conspirators does not necessarily constitute money **laundering**, since a crime may not be complete until such a distribution occurs. *See United States v. Dimeck*, 24 F.3d 1239, 1247 (10th Cir. 1994) (dismissing money laundering counts based on mere delivery of drug proceeds to co-conspirators, since "[t]he money laundering statute was designed to punish those drug dealers who thereafter take the additional step of attempting to legitimize their proceeds so that observers think their money is derived from legal enterprises"). "The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur." *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997) (citing *United States v. Kennedy*, 64 F.3d 1465, 1477-78

(10th Cir. 1995)).

The evidence reveals that the government failed to carry its burden of proof. The government did not establish that Dr. Azmat entered into an alleged money laundering conspiracy, or that any acts of money laundering occurred separate from and subsequent to the underlying alleged offenses. Judgment of acquittal in favor of Dr. Azmat is appropriate under Fed.R.Crim.P. 29.

### III. CONCLUSION

The superseding indictment has charged Dr. Azmat with dispensing controlled substances, however, the government has failed to prove that Dr. Azmat "dispensed" controlled substances. Since the money laundering count is dependent on dispensing, which does not describe the conduct in this case, a judgment of acquittal should be granted as to count 52. Accordingly, the Court should order a judgment of acquittal on counts 2 through 50 and 52 of the superseding indictment.

Respectfully submitted, this 16th day of January, 2014.

                                                      **s/ Thomas A. Withers, Esq.**_____
                                                     Thomas A. Withers, Esq.
                                                     Georgia Bar Number: 772250
                                                     Attorney for Dr. Najam Azmat

GILLEN, WITHERS & LAKE, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Facsimile:   (912) 629-6347
E-Mail: Twithers@gwllawfirm.com

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

This 16th day of January, 2014.

                                        **s/ Thomas A. Withers, Esq.**_____
                                        Thomas A. Withers, Esq.
                                        Georgia Bar Number: 772250
                                        Attorney for Dr. Najam Azmat

GILLEN, WITHERS & LAKE, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Facsimile:   (912) 629-6347
E-Mail: Twithers@gwllawfirm.com