UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | No. CR413-028 |
| NAJAM AZMAT, | ) | |
| Defendant. | ) | |

## DEFENDANT NAJAM AZMAT'S SUPPLEMENTAL MOTION FOR JUDGMENT OF ACQUITTAL, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

COMES NOW Defendant Najam Azmat and files this, his Supplemental Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial and shows the Court the following:

### I. BACKGROUND

As previously shown, Count 1 of the Superseding Indictment claimed that the defendants conspired to **distribute and dispense**, and caused to be distributed and dispensed, Schedule II, III, and IV controlled substances. [Doc 156-Pgs 6-11]

Counts 2 through 50 asserted that Dr. Azmat, aided and abetted by his co-defendants, "did, outside the usual course of professional practice as a medical doctor and without legitimate purpose relating to the practice of medicine, knowingly, intentionally and unlawfully **dispense**" Schedule II, III, and IV controlled substances

1

on various occasions from February 21, 2011, to March 15, 2011, all in violation of 21 U.S.C. § 841(a) (1). [Doc 156-Pgs 11-15][emphasis added]. Count 52 contended that Dr. Azmat and his co-defendants conspired to launder money, with the specified unlawful activity being "the **dispensation** of Schedule II, III, and IV controlled substances." [Doc 156-Pg 16] [emphasis added].

The government defined the two terms at issue in the Superseding Indictment as follows:

> 11. The term **"dispense"** means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user or research subject. (21 U.S.C. § 802(10)).
> 12. The term **"distribute"** means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. The term "distributor" means a person who so delivers a controlled substance or a listed chemical. (21 U.S.C. § 802(11)).

[Doc 156-Pg. 4, Para. 11-12] [emphasis added]

The government, therefore, set the legal landscape for the charges against Dr. Azmat – that he unlawfully "dispensed" controlled substances.

2

## II. ARGUMENT AND CITATION OF AUTHORITY

**1.     There was a Material Variance Between the Indictment and the Government's Proof at Trial.**

"A constructive amendment occurs when the essential elements of the offense as alleged in the indictment are altered to broaden the potential bases for conviction beyond what the indictment contains." United States v. Tampas, 493 F.3d 1291 (11th Cir. 2007) (citing United States v. Narog, 372 F.3d 1243, 1247 (11th Cir. 2004); United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990)); see also United States v. Ward, 486 F.3d 1212, 1227 (11th Cir. 2007). A constructive amendment of the indictment constitutes *per se* reversible error because it violates a defendant's Fifth Amendment right to be tried on charges presented to the grand jury. See Tampas, 493 F.3d 1291 (citing United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990)). Under the Fifth Amendment, "a defendant can only be convicted for a crime charged in the indictment. It would be fundamentally unfair to convict a defendant on charges of which he had no notice." Ward, at 1227 (citing Keller, at 632-33).

The government now argues against itself. After charging Dr. Azmat with dispensing, and even, defining that term in the Superseding Indictment, the government now argues against itself contending that those separate statutory definitions mean the same thing, though the Superseding Indictment charged

3

substantive counts only as to dispensation, not distribution.

The Eleventh Circuit has found constructive amendments of indictments and improper broadening of the potential bases for conviction where the indictment charged the defendants with knowing or having reasonable cause to believe that pseudoephedrine would be used to manufacture methamphetamine, but the trial court instructed the jury that it could convict the defendants if it found that they knew or had reasonable cause to believe that the pseudoephedrine would be used to make "any controlled substance," Narog, 372 F3d at 1249; where the government charged that the defendant knowingly and "willfully" committed money laundering, but the court redacted the term "willful" from its charge on the definition of "intentional," United States v. Cancelliere, 69 F.3d 1116, 1121 (11th Cir. 1995); where the indictment alleged that the defendant conspired with a particular person and the trial court instructed the jury that it could convict the defendant if it found he conspired with "any" person, Keller, 916 F2d at 636; where the RICO charges in the indictment charged that the "enterprise" was a particular organized crime family but the court instructed the jury that it could convict the defendants if it found a different enterprise, Weissman, 899 F.2d at 1115; and, more recently, where the indictment charged one scheme to defraud, but proved another under the mail fraud statute, United States v. Lander, 668 F. 3d 1289 (2012).

Here the government's proof constructively amended the indictment resulted in a material variance requiring a verdict of acquittal on those charges.

**2.     The Government Improperly Commented on Dr. Azmat's National Origin**

The government conducts a *post hoc* rationalization for its question for Dr. Simopoulus about where Dr. Azmat went to medical school (the word Pakistan came from government counsel – not Dr. Simopolous) that they were really only questioning Dr. Azmat's credentialing because all of these patient's were traveling from out of state to visit him. Doc # 326, pp. 17-20.

The problem with that rationale is Dr. Azmat's education, training and experience was not an issue at trial. Claiming that "not once" did it ask a question about Dr. Azmat's national origin is too clever by half, for it was the government prosecutor who unsatisfied with Dr. Simopolous' answer that he didn't recall where Dr. Azmat went to medical school 30 years earlier – blurted out the word "Pakistan"! And, if the government's rationale for asking that question were really to test Dr. Azmat's training and experience – why not ask about the propriety of Dr. Azmat's residency training and fellowship training. Simply put – training and experience were not an issue in the case and the government's insertion into this case of Dr. Azmat's national origin had one purpose and one purpose only and that was to unduly prejudice Dr. Azmat and inflame the jury against him.

5

### III. CONCLUSION

Based upon all of the reasons and authorities set forth, Dr. Azmat respectfully requests that his Renewed Motion for Verdict of Acquittal be granted.

Respectfully submitted, this 20th day of May, 2014.

                                      **s/ Thomas A. Withers, Esq.**_____
                                      Thomas A. Withers, Esq.
                                      Georgia Bar Number: 772250
                                      Attorney for Dr. Najam Azmat

GILLEN, WITHERS & LAKE, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Facsimile:   (912) 629-6347
E-Mail: Twithers@gwllawfirm.com

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

This 20th day of May, 2014.

**s/ Thomas A. Withers, Esq.**_____
Thomas A. Withers, Esq.
Georgia Bar Number: 772250
Attorney for Dr. Najam Azmat

GILLEN, WITHERS & LAKE, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone: (912) 447-8400
Facsimile:   (912) 629-6347
E-Mail: Twithers@gwllawfirm.com