IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA        )
                                )
v.                              )
                                )
NAJAM AZMAT,                    )        CASE NO. CR413-28
                                )
        Defendant.              )
                                )

O R D E R

Before the Court is Defendant Azmat's Motion for
Judgment of Acquittal or, in the Alternative, Motion for
New Trial.  (Doc. 324.)  In this motion, Defendant contends
that the Government failed to present sufficient evidence
such that a reasonable jury could have found him guilty.
(Id. at 1-2.)  In the alternative, Defendant contends that
trial errors deprived him of a fair trial.  (Id. at 2-4.)
Defendant has also filed a Motion for Reconsideration of
Bond Pending Sentencing.  (Doc. 321.)  For the following
reasons, Defendant's motions are **DENIED**.

I.    MOTION FOR ACQUITTAL

In considering a motion for acquittal under Federal
Rule of Criminal Procedure 29, the Court views the evidence
in the light most favorable to the government.  The issue
before the Court is "whether a reasonable jury could have
found the defendant guilty beyond a reasonable doubt."

United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989). Essentially, the goal is preventing verdicts based wholly upon "speculation and conjecture." United States v. Kelly, 888 F.2d 732, 741 (11th Cir. 1989).

In this case, Defendant first argues that the Government failed to produce evidence at trial sufficient to convince a reasonable jury that he voluntarily joined a conspiracy to distribute controlled substances as charged in count one of the indictment. (Doc. 324 at 4.) However, the evidence at trial established that Defendant was recruited to work at the pain clinic through a Craigslist advertisement, that other members of the conspiracy informed him that his role would be to write prescriptions for pain medication, and that he was to be paid in cash at the end of the day for his services. Witnesses testified that this type of recruitment and pay system is not utilized in a legitimate medical practice. Defendant's co-conspirators also testified that the pain clinic was never intended to serve as a legitimate medical office, and that Defendant understood the pain clinic's actual purpose as a drug-dealing operation. Based upon this evidence, a reasonable jury could conclude that Defendant conspired to illegally distribute controlled substances, as required for the offense charged in count one of the indictment.

Second, Defendant argues that the Government failed to present sufficient evidence for a reasonable jury to conclude that he intentionally dispensed or distributed controlled substances for no legitimate medical purpose outside the usual course of professional practice, as charged in counts two through fifty.   (Id. at 5.) Defendant argues that the evidence at trial could only show that Defendant was paid in cash, that a substantial number of the patients were from out of state, and that some patients received little or no physical examination. However, evidence was also presented at trial that indicated the pain clinic exhibited a number of other "red flags" that a jury could reasonably find persuasive in determining that Defendant was illegally prescribing controlled substances.  Specifically, there was evidence at trial that showed Defendant's duties at the pain clinic consisted almost exclusively of writing prescriptions for large quantities of pain medications, that the pain clinic had minimal medical equipment and supplies, that patients were required only to have an MRI taken within the last two years to receive medications, and that the pain clinic operated on a primarily cash basis and did not accept insurance.  The Government also produced an expert witness who testified that Defendant's prescriptions served no

medical purpose and were outside the usual course of a legitimate medical practice.   Based upon this evidence, a reasonable jury could conclude that Defendant dispensed or distributed controlled substances for no legitimate medical purpose and outside the usual course of professional practice, as required for the offenses charged in counts two through fifty.[1]

Next, Defendant argues that he cannot be convicted of dispensing or distributing controlled substances with respect to those counts for which patient testimony was not offered.   (Doc. 324 at 7-8.)   However, patient testimony is not required to support a conviction for unlawful dispensation or distribution of controlled substances.   The facts of this case are easily distinguishable from those of United States v. Tran Trong Cuong, 18 F.3d 1132 (4th Cir. 1994), upon which Defendant chiefly relies.   The Court in Tran Trong found the prosecution's evidence insufficient

---

[1] Defendant argues that the evidence presented at trial did not support his conviction in part because his actions at the pain clinic—including normally maintaining patient records and reducing patient medications—are in contrast to the factors outlined in United States v. Rosen, 582 F.2d 1032 (5th Cir. 1978).   However, Defendant's reliance on Rosen is misplaced.   While Rosen includes a number of factors that may support a guilty verdict, they are only examples. (Id. at 1036.)   The list is neither exclusive nor are all the factors necessary to find a Defendant guilty. A jury is free, as it did this case, to consider other evidence in determining that a defendant committed the offenses charged.

because it addressed the prescriptions at issue only in broad terms and without specificity, whereas in this case the Government's expert witness discussed the medical records of each patient charged in the indictment. This type of evidence may support a conviction under 28 U.S.C. § 841. See United States v. Bourlier, 518 F. App'x 848, 852 (11th Cir. 2013) (upholding jury conviction where expert witness physician discussed individual medical files of patients who did not testify at trial). Because evidence was offered in this case for each of the counts charged, there is no reason to overturn the jury's verdict for lack of evidence.

Defendant next argues that the Government did not establish an appropriate threshold standard for proper medical care by which the jury could measure his actions. (Doc. 324 at 10.) However, the Government's expert witness testified extensively about the applicable medical standards published by the Georgia Composite State Board of Medical Examiners as well as standard practice procedures outlined in various medical reference materials. The Court finds that the jury could fairly conclude from this evidence, combined with the evidence of Defendant's actions, that Defendant prescribed controlled substances outside the usual course of professional practice and

without a legitimate medical purpose as was charged in the indictment.  See Bourlier, 518 F. App'x at 852 (upholding conviction where testimony of state medical board procedures and other medical procedural literature were sufficient to establish standard of care).

Defendant's final arguments for acquittal, which are simply restatements of his prior Motion for Acquittal (Doc. 307), are based on the idea that the Government proved only that Defendant prescribed controlled substances, rather than dispense controlled substances as charged in the indictment.  The Court declines to engage in a full discussion of this issue as it previously denied Defendant's motion for acquittal.  However, the Court does note that it can find no Eleventh Circuit case to support Defendant's proposition that a charge of "dispensing" controlled substances does not apply to a physician writing prescriptions without a legitimate medical purpose.  In fact, the only binding precedent on the issue appears to hold quite the opposite.  See United States v. Leigh, 487 F.2d 206, 207 (5th Cir. 1973)[2] ("It has been decided that a doctor can be indicted, tried, and convicted for the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

unlawful dispensing of a controlled substance, if his prescription is not for a legitimate medical purpose in the usual course of his professional practice."); see also Bourlier, 518 F. App'x 848 (affirming conviction for dispensing controlled substances of physician who prescribed controlled substances). In addition, the indictment clearly lays out the various prescriptions for which Defendant was charged, furthering discrediting Defendant's claim that he was unfairly convicted on a charge of which he had no notice. Accordingly, the Court sees no reason to revisit its prior ruling denying Defendant's motion for acquittal on these same grounds.

## II.  MOTION FOR NEW TRIAL

Defendant also argues that a new trial is proper because a number of trial errors, both individually and cumulatively, deprived him of a fair trial. (Doc. 324 at 2-3.) The court may grant a Defendant's motion for new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where a Defendant moves for a new trial based on improperly admitted evidence, the defendant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error was prejudicial to the defendant. United States v. Stephens, 365 F.3d 967, 974 (11th Cir.

2004).   Motions for new trials based on other trial errors
must demonstrate that the error created circumstances which
rendered the trial prejudicially unfair.  See United States
v. Prunick, 273 F. App'x 807, 808 (11th Cir. 2008)
(affirming decision to grant new trial where joinder of
pornography counts with other charges resulted in
prejudicially unfair trial); United States v. Martinez, 763
F.2d 1297, 1315 (11th Cir. 1985) (rejecting defendant's
motion for new trial based on discovery violation because
violation did not render trial "fundamentally unfair").

    Defendant first argues that the Court erred in
admitting the testimony of the Government's expert witness,
Dr. Kennedy.   (Doc. 324 at 11.)   Specifically, Defendant
argues that Dr. Kennedy's testimony is inadmissible because
he offered his opinions without explaining what information
informed those opinions and how he determined the
applicable standards of medical practice.   (Id. at 14.)
However, Dr. Kennedy testified that he determined the
appropriate standards of care in part by relying on his
years of practice in pain management, reviewing of academic
and professional medical literature that relate to pain
management and prescription drug treatment, and examining
the criteria outlined in professional guidelines used in
the state of Georgia.   Dr. Kennedy also testified that he

reviewed the patient files and records created by Defendant, and evaluated them in light of the standards produced by the methodology stated above. Such foundational evidence is sufficient to support expert testimony, meaning the testimony is not the mere ipse dixit that Defendant claims. See also United States v. Frazier, 387 F.3d, 1244, 1261 (11th Cir. 2004) (holding that expert witness may rely on experience so long as it is shown how experience forms sufficient basis for expert's opinion). Accordingly, the Court finds no error in admitting this testimony.

Second, Defendant argues that it was error by the Court to reject his proposed jury instructions. (Doc. 324 at 14-17.) A trial court's refusal to give a jury instruction is only reversible error if "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." United States v. Paradies, 98 F.3d 1266, 1286 (11th Cir. 1996). Defendant argues that those jury instructions he proposed that were rejected by the Court were necessary to support Defendant's defense theory that

"being a negligent physician, or even grossly negligent physician did not equate with being a drug dealer." (Doc. 324 at 17.)   However, the Court repeatedly instructed the jury as to Defendant's potential "good faith" defense, including the charge that "unless you [the jury] can find beyond a reasonable doubt that the conduct charged in a specific count of the indictment was not done in good faith in the course of a medical practice, you must acquit the defendant of that charge." (Doc. 319 at 17.)   Further, no instructions were given as to suggest Defendant could be convicted for simply negligent conduct, as Defendant appears to have feared.   Accordingly, the Court finds no error in the given jury instructions.

Defendant also argues that admission of all of the patient files from Defendant's time at East Health Center was unfairly prejudicial—and should have been excluded under Federal Rule of Evidence 403—because the Government failed to present evidence concerning the doctor—patient relationship with regard to any prescriptions not specifically identified in the indictment.   (Doc. 20-21.) However, excluding evidence as unfairly prejudicial "is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." United States v. Betancourt, 734 F.2d 750, 757 (11th Cir. 1984) (citations omitted).   Here, the

Court concludes that the patient files outlining the number of prescriptions as well as the residency of the patients were highly relevant evidence because they demonstrate overt acts by Defendant in furtherance of the conspiracy. It is axiomatic that this evidence is prejudicial towards Defendant, but the Court disagrees that it is unfairly so. See id. ("In criminal trials relevant evidence is inherently prejudicial.") Given the high probative value of this evidence, the Court finds no error in its admittance.

Lastly, Defendant argues that the Government committed prosecutorial misconduct in asking the defense's expert witness—Dr. Tom Simopolous—whether he knew Defendant had gone to medical school in Pakistan. (Doc. 324 at 17-20.) To constitute reversible error, the challenged statements must be both improper and prejudicially affect the Defendant's substantial rights. United States v. Obregon, 893 F.2d 1307, 1310 (11th Cir. 1990). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995) (citing Kennedy v. Dugger, 933 F.2d 905, 914 (11th Cir. 1991)). The Government's statements are also reviewed in light of

the particular facts of this case and in the context of the entire record.  United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990).

Although the Court agrees that the Government's question regarding the location of Defendant's schooling was improper, the Court does not agree that it prejudicially affected Defendant's case so as to deny him a fair trial.[3]  Because the Government presented a great deal of evidence to support Defendant's conviction, there is no reason to think that, but for the Government's statement, the outcome would have been different in this case. Accordingly, the Court finds the Government's comment inconsequential in light of the record in this case and that its utterance did not result in a prejudicially unfair trial.

III. MOTION FOR BOND RECONSIDERATION

Defendant argues that he should be released on bond pending sentencing pursuant to either 18 U.S.C. § 3143(a)(2) or 18 U.S.C. § 3145(c).  (Doc. 321 at 8.) Because release pursuant to § 3143(a)(2) requires that there be a substantial likelihood that a motion for acquittal or new trial will be granted, and because

---

[3] The Court notes that Defendant did not object or request any sort of curative jury instructions at the time the statement was made.

Defendant's motion on those grounds is denied, the Court need only address Defendant's argument for release under § 3145(c). As a prerequisite for consideration of release under § 3145(c), there must exist "exceptional circumstances" that make Defendant's detention inappropriate. However, even if the Court finds that exceptional circumstances do exist, it is under no obligation to release Defendant. See United States v. Meister, 744 F.3d 1236, 1240 (11th. Cir. 2013) (noting that whether or not to release defendant prior to sentencing was matter of district court's discretion).

As support for his contention that exceptional circumstances do exist in this case, Defendant states that he assists his wife in caring for his special needs teenage child (Doc. 321 at 8) and that the Chatham County jail where he is detained has provided him with unsatisfactory medical care (Doc. 328 at 9-10). After careful consideration, however, the Court finds Defendant's arguments unpersuasive. Defendant's medical needs and family concerns may unfortunately be complicated by his detention, but they do not constitute such exceptional circumstances as to merit his release. Accordingly, Defendant will remain in detention pending sentencing in this case.

## CONCLUSION

For the foregoing reasons, the Court finds that that the Government presented sufficient evidence such that a reasonable jury could have found him guilty of the charges and that no errors at trial deprived Defendant of a fair trial.   Accordingly, Defendant's Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial (Doc. 324) is **DENIED**.[4]   In addition, Defendant's Motion for Reconsideration of Bond Pending Sentencing (Doc. 321)   is also **DENIED**.

SO ORDERED this 6th day of June 2014.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

_____

[4]  Defendant has also filed a Supplemental Motion for Acquittal or in the Alternative Motion for New Trial (Doc. 334) further arguing the same issues contained within Defendant's original motion.     Accordingly,    this supplemental motion is also **DENIED**.

14