# RESTRICTED - COURT USERS ONLY

## IN THE UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH  DIVISION

UNITED STATES OF AMERICA       *

v.                             *   CASE NUMBER CR413-28

NAJAM AZMAT                    *

---

Transcript of Evidence and Proceedings Adduced in the Jury Trial held January 13-17, 2014 (*Voir Dire* and Jury Selection) before The HONORABLE WILLIAM T. MOORE, JR., Judge Presiding, reported by Marie Cowart, Official Court Reporter.

---

### VOLUME 1A - 1/13/2014

### PP. 1 - 56

APPEARANCES:

For the Government                          KARL I. KNOCHE, AUSA
                                  GREGORY E. GILLULY, JR., AUSA

For the Defendant                          THOMAS A. WITHERS, ESQ.

*Proceedings recorded by shorthand with back-up recording; transcript produced from note reading in conjunction with transcription of back−up recording.*

## I  N D E X

### VOLUME 1A - 1/13/2014

(*Voir Dire* and Jury Selection)

### PP. 1 - 56

PRELIMINARIES AND INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

JURY PANEL SEATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*VOIR DIRE* EXAMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

     Juror Biographicals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

SILENT STRIKING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54

JURY SEATED AND SWORN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56

### VOLUME 1 - 1/13/2014

### PP. 57 - 201

PRELIMINARIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

COURT'S RULINGS ON EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

OPENING STATEMENTS

    By Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

    By Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Government's Presentation of Evidence

MARY KAY ROSS

    Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . . 82

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . . 90

    Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 93

    Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . 94

DAVID HATMAKER

    Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 103

    Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . 107

CHARLES SIKES

Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . . 107

Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 150

Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 181

Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . 188


CHARGE CONFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 193


CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 201

VOLUME 2 - 1/14/2014

PP. 202 - 456

PRELIMINARIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 202


ADELARD LeFRANCOIS

Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . . 202

Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 251

Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 277

Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . 284


FRANCIS J. BARBUSCIA

Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . 286

Cross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 301

Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . 310

Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 311

## NANCY BINION

Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . 312

Cross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 329

Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . 333

## PATRICIA ROHRER

Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . 334

Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 344

Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . 350

Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 351

## KONSTANTINO AFTHINOS

Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . 352

Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 369

Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . 378

Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 381

SEAN CLARK

    Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . . . 383

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . . . 392

    Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . 401

    Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 402


JOSEPH TRAVIS BRADLEY

    Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . . . 403

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . . . 415

    Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . 431


LATINA SIMPSON

    Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . . . 434

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . . . 445

    Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 452


CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 456


VOLUME 3 - 1/15/2014

PP. 457 - 734

PRELIMINARIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 457

GERALD SMITH

    Direct Examination by Mr. Knoche  . . . . . . . . . . . . . . . . . . . . . . . . . 457

    Cross-Examination by Mr. Withers  . . . . . . . . . . . . . . . . . . . . . . . . . 469

JAMES GABLE

    Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . 480

    Cross-Examination by Mr. Withers  . . . . . . . . . . . . . . . . . . . . . . . . . 488

    Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . 494

    Recross Examination by Mr. Withers  . . . . . . . . . . . . . . . . . . . . . . . 496

BILL LETNER

    Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . 496

    Cross-Examination by Mr. Withers  . . . . . . . . . . . . . . . . . . . . . . . . . 507

    Redirect Examination by Mr. Gilluly  . . . . . . . . . . . . . . . . . . . . . . . 512

    Recross Examination by Mr. Withers  . . . . . . . . . . . . . . . . . . . . . . . 513

KIMBERLY LETNER

    Direct Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . 516

    Cross-Examination by Mr. Withers  . . . . . . . . . . . . . . . . . . . . . . . . . 524

    Redirect Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . 534

    Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 537


KEN GOSSETT

    Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 537

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . 546

    Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . 563

    Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 567


DANIEL WISE

    Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 569

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . 586

    Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . 605

    Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 608


MICHAEL PALMER

    Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 609


GENE SCOTT KENNEDY, M.D.

    Direct Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . 611

    Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . 673

COURT'S INSTRUCTION TO COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . 726

COURT'S INSTRUCTION TO DR. KENNEDY . . . . . . . . . . . . . . . . . . . . . . 728

COURT'S RULING ON APPROPRIATE STANDARD
        FOR GOOD-FAITH DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 728

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 734

<u>VOLUME 4 - 1/16/2014</u>

<u>PP. 735 - 932</u>

PRELIMINARIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 735

GENE SCOTT KENNEDY, M.D.

        Continued Cross-Examination by Mr. Withers . . . . . . . . . . . . . . . . 735

        Redirect Examination by Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . 761

        Recross Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 775

COURT'S RULINGS ON EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 777

GOVERNMENT RESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 777

DEFENSE RULE 29 MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 778

RESPONSE OF GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 780

COURT DEFERS RULING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 780

Defendant's Presentation of Evidence

THOMAS SIMOPOULOS, M.D.

    Direct Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . 783

    Cross-Examination by Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . 859

    Redirect Examination by Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . 917

DEFENSE RESTS AND CLOSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 918

COURT'S RULINGS ON EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 919

CHARGE CONFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 922

DEFENSE RENEWS RULE 29 MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . 930

DEFENDANT WAIVES RIGHT TO TESTIFY . . . . . . . . . . . . . . . . . . . . . . . 931

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 932

## VOLUME 5 - 1/17/2014

## PP. 933 - 987

PRELIMINARIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 933

CLOSING ARGUMENTS

    By Mr. Knoche . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 933

    By Mr. Withers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 946

REBUTTAL ARGUMENT

    By Mr. Gilluly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 964

COURT'S RULING ON DEFENSE RULE 29 MOTION . . . . . . . . . . . . . . 973

DEFENSE EXCEPTIONS TO CHARGE . . . . . . . . . . . . . . . . . . . . . . . . . . 975

JURY QUESTIONS 1 AND 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 976

RECEIPT OF VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 977

JURY POLLED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 980

POST-CONVICTION RIGHTS ADVISED . . . . . . . . . . . . . . . . . . . . . . . . . 980

JURY INSTRUCTED REGARDING FORFEITURE . . . . . . . . . . . . . . . . . . 982

DETENTION  HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 982

COURT'S RULING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 986

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 987

-13-

1    [NOTE: Court is convened on 1/13/2014.  Roll is taken, and the

2    jury panel is qualified, sworn and seated.  Thereafter, court is opened and

3    the proceedings commenced as follows:]

4    THE COURT: Good morning, ladies and gentlemen.  Would you

5    call the case, please, Ms. Bodaford.

6    CLERK: Yes, Your Honor.  The Court calls the case of United

7    States of America versus Najam Azmat, Case Number CR413-28.

8    Representing the government is Karl Knoche and Greg Gilluly, Jr.;

9    representing the defendant is Thomas Withers.  This case is called for jury

10   selection and trial.

11   MR. KNOCHE: The government is ready, Your Honor.

12   MR. WITHERS: Dr. Azmat is ready, Your Honor.

13   THE COURT: Ladies and gentlemen, you've been summonsed

14   here today for jury duty, and our law provides that you're selected at

15   random for jury service from the counties of this division, which is the

16   Savannah Division of the United States District Court.  We have six

17   divisions of court in the Southern District of Georgia: Augusta, Savannah,

18   Brunswick, Statesboro, Dublin and Waycross, and you come from those

19   counties that make up the Savannah Division.

20   However, let me emphasize that you do not represent anyone.

21   You do not owe any allegiance to any person or any group of persons and,

22   just as I am, you're bound by the law, and your only allegiance is to the law.

23   As I've said, you come from different backgrounds and different

24   communities, but you don't serve any constituency or philosophy.  All that

25   we ask that you do during your jury service is to use your own good

-14-

1    common sense, and to follow the law, and when you have done that then

2    you will have discharged your responsibilities as a juror.

3         Now, the Clerk advises me that each of you has the requisite

4    qualifications to serve as a juror in this Court, and this call upon your time

5    is part of your obligation of citizenship in this great country, and no one

6    should avoid fulfilling the obligation except under the most pressing of

7    circumstances.

8         Service on a jury affords you an opportunity to be part of the

9    judicial processes by which the legal affairs and the liberties of your fellow

10   men and women are determined and protected under our constitutional

11   form of government.  And you're being asked to perform one of the highest

12   duties of citizenship; and that is, in this case today, to sit in judgment of

13   facts that will resolve a criminal case.  We hear both civil and criminal cases

14   in this Court, and the case assigned today just happens to be a criminal

15   case.

16        Now, this demand upon your time and this call upon you for

17   jury duty will not be unreasonably or unduly prolonged.  Every effort will

18   be made to see that your time is not wasted.  Counsel for the government

19   and counsel for the defendant have informed me that they expect this trial

20   to last approximately one week.  Sometimes they're right in their

21   estimation, sometimes they're not correct in their estimation.

22        Now, the Court realizes that your service on a jury panel is not

23   always convenient.  I know that sometimes its downright inconvenient.  But

24   a mere inconvenience that would not constitute a great hardship to an

25   individual or an individual's family is not an excuse, and it's only under the

1 circumstances of hardship that the Court may excuse a juror for good

2 cause.

3         Did we have a late juror come in?

4         COURT SECURITY OFFICER: Spectator, Your Honor.

5         THE COURT: Excuse me?

6         COURT SECURITY OFFICER: A spectator.

7         THE COURT: Now, at this time the Court will hear from anyone

8 wishing to be excused from jury service.  When your name is called, if you'll

9 come forward to the lectern here and give me your reason that you wish to

10 be excused, I will hear from you.  If your reason is so personal that you do

11 not want to discuss it among the other people here, if you will let me know,

12 then I will talk with you here on the side of the bench in private.

13         All right, Ms. Bodaford.

14         CLERK: Number 28, Charles McFadden.

15         THE COURT: Yes, sir, Mr. McFadden.

16         MR. McFADDEN: Good morning, Your Honor.  My name is

17 Charles McFadden, and I have diabetes, and it's uncontrollable.  It's not

18 controlled at this time.

19         THE COURT: Do you have an excuse from a physician?

20         MR. McFADDEN: No, sir.  No, sir, because I'm – I don't go to a

21 mailbox because I use email, and unfortunately I wasn't able to get the

22 proper papers that I need.

23         THE COURT: Well, I don't know what you mean by

24 unfortunately.  All these other people out here got the papers that they

25 needed, and they got the information from the clerk's office, and I know

1       that information says that if you've got a medical excuse, please let us know

2       in advance, or at least bring your medical excuse on the day that you're

3       supposed to come for jury service.

4                       MR. McFADDEN: Yes, sir, I would have my information, but I

5       required (sic) it at a later date.

6                       THE COURT: Do you take daily medication?

7                       MR. McFADDEN: Yes, sir, I have my medicine right now.

8                       THE COURT: I mean, do you take injections or do you take

9       pills?

10                      MR. McFADDEN: I take injections, sir, and I have my meters

11      and my meals and my insulin right now.

12                      THE COURT: Well, I've got to take you at your word, but I will

13      tell you this, within the next week you're going to have to give me a medical

14      excuse from your doctor –

15                      MR. McFADDEN: Yes, sir.

16                      THE COURT: – telling me what your medical condition is, and

17      telling me why that condition prevents you from serving on a jury.  And if

18      you do not do that, I will bring you back here, I will hold you in contempt of

19      court, and you will be fined.  Do you understand that?

20                      MR. McFADDEN: I will have your papers ready for you, sir.

21      THE COURT: Within one week.

22      MR. McFADDEN: Within one week.

23      THE COURT: All right, you're excused at this time, thank you.

24      [NOTE: Mr. McFadden exits the courtroom.]

25      THE COURT: Ladies and gentlemen, in order that you will

-17-

1   know the Court's personnel with whom you will be working, and their

2   respective duties, I want to take a few moments and introduce them to you.

3          The Deputy Clerk sitting here in front of me is Ms. Jennifer

4   Bodaford.  Ms. Bodaford is sort of like the Court's right-hand man in these

5   cases.  She will assist the Court in any scheduling of any trials or hearings

6   or other related matters regarding this case.

7          The Court reporter seated here on my left is Ms. Marie Cowart.

8   Ms. Cowart is recording everything that's said in the courtroom, including

9   the statements that I'm now making, the questions that will be propounded

10  to you, and your answers, and all matters related to this case.

11         Each United States District Court Judge has two law clerks that

12  work for them.  These are young men or young women who have finished

13  law school, passed the bar exam, and worked for a couple of years with the

14  Court.  And the Judicial Clerk working in this case today is Mr. Brian Lake.

15  Mr. Lake is sitting over here, and you will see him coming in and out during

16  the trial of this case and assisting the Court.

17         You'll also notice a number of Marshals or Security Officers

18  present in the court.  These officers enforce the Court's orders, and they're

19  in charge of the jury.  These officers are present any time we open court.  It

20  doesn't matter whether it's a civil matter or a criminal matter, any time we

21  open court for the public these officers are present.  And they enforce the

22  Court's orders, and they're in charge of the jury.  If you desire to inquire

23  about any matter touching upon your personal welfare, apart from the case

24  that's actually being tried, then you should make your inquiries known to

25  these officers, and they will call it to my attention, and I will hear from you

-18-

1    about such matters if necessary..

2    Now, in just a few minutes the Court will ask you questions as

3    to your individual qualifications to serve as jurors in this particular case.

4    This part of the case is known as the *voir dire* examination.  These are old

5    French words that at an early time came into usage in English courts, and

6    later into usage in the courts in the United States, and they literally mean to

7    speak the truth.  Under your oath as a prospective juror, you have agreed to

8    truthfully answer questions concerning your qualifications.

9    Please understand that these questions are not asked for the

10   purpose of prying into your personal affairs.  They're only asked for the

11   purpose of assisting the Court and the lawyers in obtaining a fair and

12   impartial jury.  Thus, the *voir dire* examination is a means of determining

13   if your decision in a case would in any way be influenced by any opinion

14   that you now hold, or by any personal experience that you've had, or by

15   some personal knowledge that you might have concerning the issue of this

16   case, or the lawyers, or the witnesses that might be involved.   And the

17   object is to get a jury that will impartially try the issues of this case upon

18   the evidence presented in this courtroom, without being influenced by any

19   other factors.

20   Now, the Clerk is going to randomly select some of you to form

21   a panel from which the jury will be selected.  And after a brief *voir dire*

22   examination, then the lawyers will be provided with what we call

23   peremptory challenges, where each side is given a number of challenges

24   where they can challenge any of the jurors.  Both the government and the

25   defendant may ask that certain of you be dismissed from the panel.  And

-19-

1   they can excuse you or make this challenge without giving any reason

2   therefor.

3         If you're challenged or excused by either side, please don't feel

4   offended.  Don't feel that your honesty or your integrity is being

5   questioned.  I can assure you that it is not.  I can tell you from over 30 years

6   of experience of selecting juries as a lawyer, and the last 19 years on this

7   bench, that this is not a scientifically accurate process that we're about to

8   engage in.  Many times a lawyer will excuse one witness and accept another

9   witness, not because of any particular answer that you – I mean juror – not

10   because of any particular answer that you may have given, but just because

11   the lawyer may have what we call a "gut" feeling that one person would be a

12   better juror than another juror.

13         Now, the Clerk is now going to randomly call the requisite

14   number of you to form a panel.  When your name is called, please come

15   forward and have a seat as you will be instructed by the officer.

16         Ms. Bodaford.

17         CLERK: Yes, Your Honor. [Seated in jury box] Number 2,

18   Beverly Banks.  Number 23, Marcus Johnson.  Number 18, Randy Gerdes.

19   Number 1, Eboni Andrews.  Number 16, Lynn Fritts. Number 8, Toni

20   Capers. Number 15, Stephanie Frame. Number 9, Benjamin Clements.

21   Number 35, Barbara Porter.  Number 29, Daniel Meeks.  Number 44,

22   Thomas Vetter.  Number 11, Michael Folker.  Number 33, Curtis Nile.

23   Number 31, Jacqueline Moss.

24         [Seated in first row] Number 7, William Burran.  Number 36,

25   Jonathan Proffitt.  Number 22, Wyman Inglett.  Number 20, Willie

-20-

1    Haynes.  Number 39, Steve Scott.  Number 42, Audrey Smith.  Number 17,

2    Kevin Fryer.  Number 38 Cuyler Sanders.  Number 41, Murray Silver.

3    [Seated in second row] Number 13, Leon Foston.  Number 19,

4    Mark Hayes.  Number 43, April Thornton.  Number 26, Jeremy Lightsey.

5    Number 10, Sandra Curtis.  Number 12, Derwin Forney.  Number 24, Elise

6    Lehman.  Number 4, Kimberly Bean.  Number 14, Jeffrey Frame.

7    The panel is seated, Your Honor.

8    THE COURT: Ladies and gentlemen, those of you who were not

9    called in the panel, you do not need to answer any questions at this time, so

10   don't raise your hand and don't try to answer any questions.  But you still

11   need to pay close attention to the questions and the proceedings, because in

12   the event that any panel member should be disqualified then we would

13   have to draw another name and place one of you into the panel.  So you do

14   not need to answer any questions, but you do need to pay attention to the

15   proceedings.

16   I'll now discuss the pertinent portions of the indictment which

17   sets forth the charges against the defendant.  The indictment is not to be

18   considered by you as evidence.  It's merely a formal written charge against

19   a defendant, and you must consider it as evidence of a defendant's guilt,

20   nor must you be influenced by the fact that this indictment has been filed

21   against the defendant.

22   The indictment contains 51 counts or charges.

23   Count 1 charges that the defendant knowingly and willfully

24   conspired to dispense controlled substances outside the usual course of

25   professional practice for a medical doctor, and without legitimate purpose

-21-

1    related to the practice of medicine.

2            Counts 2 through 50 charge the defendant with individual and

3    separate instances of knowingly dispensing or prescribing to be dispensed

4    a controlled substance outside the usual course of professional practice for

5    a medical doctor, and without legitimate purpose.

6            Count 52 charges that the defendant did knowingly and willfully

7    conspire to launder money.

8            Now, the defendant has denied these charges, and has pled not

9    guilty.

10           You have now heard the very basic matter of this case.  The

11   Court now has certain questions that it will address to you.  And as I've

12   said, those of you who are not in the panel, you do not need to answer any

13   of these questions.  But those of you who are in the panel, if you have an

14   answer to any of my questions, please raise your hand, and I will identify

15   you.  When I identify you, always stand, and always give us your name.  No

16   matter how many times you many answer a question, always stand, always

17   give us your name.  The reason is that the lawyers who are sitting out here

18   selecting this jury, all they've got is a piece of paper that's got your name

19   and number on that piece of paper, and they need to be able to properly

20   identify you any time that you might answer.  So always stand, always give

21   us your name before you answer.

22           And we're going to try to go in an orderly manner, and we will

23   start on the back row here and go across the row.  We'll go down to the

24   second row here, the front row and go across the row.  And then we'll go

25   down to the first row in the audience and go across that row, and then to

1    the second row in the audience and go across that row.  And we're going to

2    try to keep that order as well as we can to avoid confusion.

3            Now, do any of you know anything about this case, either

4    through your own personal knowledge, or by discussing it with anyone else,

5    or by reading or hearing anything about it in any news media?  Do you

6    know anything about this case?

7            [NOTE: No responses.]

8            THE COURT: At this time I will introduce counsel representing

9    the government and the defendant.  The government is represented by Mr.

10   Karl Knoche and Mr. Greg Gilluly.  This is Mr. Knoche and Mr. Gilluly.

11   They are Assistant United States Attorneys in this district.  Thank you.

12           The defendant is represented by Mr. Tom Withers.  This is Mr.

13   Withers.  Mr. Withers is a local Savannah attorney.

14           Mr. Knoche, will you please introduce your case agent to the

15   jury.

16           MR. KNOCHE: Your Honor, the government's case agent at the

17   table is Diversion Investigator for the DEA, Charles Sikes.  And behind him

18   is Special Agent Douglas Kahn of the DEA.

19           THE COURT: Thank you.  Ladies and gentlemen, do any of you

20   know any of these agents who were just introduced by Mr. Knoche in any

21   capacity whatsoever, or are you related to them by blood or marriage in any

22   way.

23           [NOTE: No responses.]

24           THE COURT: Mr. Withers, would you please introduce your

25   client to the jury.

1          MR. WITHERS: Yes, Your Honor.  I think there was one

2    response on the second row on that last question.

3          THE COURT: Yes, ma'am?  You've got to raise your hand so I

4    can see you.  Yes, ma'am?

5          COURT SECURITY OFFICER: Stand up, please.

6          THE COURT: Stand and give me your name.

7          MS. LEHMAN: Elise Lehman.  What I have to say I don't want

8    to say in front of everyone.

9          THE COURT: All right, come over here.  Counsel, come over

10   here, please.

11         [NOTE: Side bar conference on the record with Ms. Lehman]

12         MS. LEHMAN: This is awful –

13         THE COURT:  – Yes, ma'am, come up here so I can hear.

14         MS. LEHMAN: I see somebody, a physician, for ongoing

15   management of pain, and when I was in the office I overheard about

16   somebody who had gotten in trouble.  I'm not certain it was this gentleman,

17   but they were –

18         THE COURT:  – Well, you say you overheard someone who had

19   gotten in trouble, what did you hear about – there's all kinds of trouble that

20   people get in.

21         MS. LEHMAN: Well, what they said – what was said was how

22   everyone is being so thorough now in the examinations, the blood pressure.

23   In other words, they go through all these different steps before you are

24   given a prescription.  And if you're given a prescription at the time, the

25   doctor signs it.  He doesn't pre-sign –

-24-

1        THE COURT:  – Is that what you heard?

2        MS. LEHMAN: That's what I heard them saying because

3    something had happened to someone in the community.

4        THE COURT: Okay, but they don't know who the person was?

5        MS. LEHMAN: I don't know, because I – I don't recognize

6    names.  I'm not from here.

7        THE COURT: Okay, well, when you say had gotten in trouble,

8    what do you mean, gotten in trouble?  That could be a lot of things.

9        MS. LEHMAN: Well, they more or less said that someone had

10   been under scrutiny by the DEA, and the DEA was cracking down because

11   of a physician not following through.

12       THE COURT: Okay.

13       MS. LEHMAN: Okay, so –

14       THE COURT:  – But that's all you heard?

15       MS. LEHMAN: Yes.

16       THE COURT: Okay.  You didn't hear about any particular

17   individual?

18       MS. LEHMAN: No.

19       THE COURT: You didn't hear about anything that had

20   happened to that individual?

21       MS. LEHMAN: Well, that he had gotten in trouble and –

22       THE COURT:  – Well, I mean, you've explained – but, now,

23   getting in trouble could be a lot of things, you know.  Did you hear about

24   any charges being made against the individual?

25       MS. LEHMAN: I don't recall.  At the time it wasn't pertinent,

1    but now it is.

2                    THE COURT: All right, thank you.

3                    MS. LEHMAN: Your Honor, can I go back to my seat?

4                    THE COURT: Just have a seat right over there, just in any of

5    those chairs right there.

6                    [NOTE: Ms. Lehman leaves side bar.]

7                    THE COURT: All right, counsel, I know you want to be heard,

8    so ...

9                    MR. KNOCHE: No challenge for cause from the government.

10                   MR. WITHERS: Your Honor, I think we would reserve our

11   strike for cause at this point in time with respect to that, depending on her

12   responses to other questions.

13                   THE COURT: So at this time you want her to go back and have

14   a seat?

15                   MR. WITHERS: Yes, sir.

16                   THE COURT: All right, ma'am, you can go back and have a seat,

17   thank you.

18                   [NOTE: Ms. Lehman is again seated in the panel.  Side bar

19   conference concluded.]

20                   THE COURT: Mr. Withers, I was at the point where I was

21   asking you to introduce your client to the jury, please, sir.

22                   MR. WITHERS: Yes, sir, Your Honor.  This is Dr. Najam

23   Azmat, A-Z-M-A-T, Dr. Azmat.

24                   THE COURT: Thank you.  Ladies and gentlemen, do any of you

25   know Dr. Azmat in any capacity whatsoever?  Or are any of you related by

-26-

1      blood or marriage to your knowledge to Dr. Azmat?

2                [NOTE: No responses.]

3                THE COURT: Mr. Knoche, at this time I will ask you to stand

4      and read to this panel the names of any witnesses who may appear and

5      testify in this case.

6                MR. KNOCHE: Yes, Your Honor.  Ladies and gentlemen, the

7      government may call some or all of the following witnesses: Special Agent

8      Douglas Kahn who you were introduced to a moment ago.  Diversion

9      Investigator Charles Sikes.  They're both with the DEA.  You may hear from

10     Special Agent Bobby Banks of the Georgia Bureau of Investigation.  From

11     the Chatham-Savannah Counter Narcotics Team, Angela Coleman and Ron

12     Tyran, both agents with the CNT.  From the Internal Revenue Service,

13     Special Agent Michael Palmer.

14                Other witnesses, non-law enforcement witnesses, who may be

15     called include: Konstantinos Afthinos.  Francis Barbuscia.  Nancy Binion.  I

16     might say, those first two, Afthinos and Barbuscia, are residing in Florida;

17     Binion from Kentucky.  Joseph Bradley from Florida.  Sean Clark from

18     Florida.  James Gable, South Carolina.  Warren Gold.  Dr. Kenneth Gossett.

19     Dr. David Hatmaker.  Dr. Gene Kennedy.  Adelard LeFrancois from

20     Florida.  Billy Letner, Kim Letner, both from Florida.  David Mink,

21     Kentucky.  Patricia Rohrer, Kentucky.  Dr. Mary Kay Ross.  Latina Simpson

22     is a Kentucky witness.  Gerald Smith.  Daniel Wise, and Dr. Martin

23     Zdanowicz.

24                THE COURT: Thank you, Mr. Knoche.  Ladies and gentlemen,

25     to your knowledge, do you know any of the witnesses whose names were

-27-

1   called by Mr. Knoche in any capacity whatsoever, or are you related by

2   blood or marriage to any of those witnesses?

3            [NOTE: No responses.]

4            THE COURT: The defendant in a case such as this is not

5   required to produce any evidence.  However, Mr. Withers, if you know of

6   any witnesses that you may call, I will ask you to please identify those

7   witnesses to the panel at this time.

8            MR. WITHERS: Thank you, Your Honor.  Just a few witnesses:

9   Dr. Tom Simopoulos.  Dr. Simopoulos is from Boston, Massachusetts.

10  Tehmina Kahn from Atlanta.  Nabil Azmat from Atlanta.  Dr. Darlene

11  Tanner from Waycross.  James Arnold from Waycross.  Curtis Jones from

12  Savannah, and Nilda Montano from Miami.

13           THE COURT: Thank you, Mr. Withers.  Ladies and gentlemen,

14  do any of you know any of those witnesses in any capacity whatsoever, or

15  are you related to any of them by blood or marriage.

16           [NOTE: No responses.]

17           THE COURT: Do any of you have any physical impairments,

18  such as hearing, or sight, or some other physical impairment that would

19  render you incapable of performing your duty as a juror in this case?  Yes,

20  ma'am.

21           MS. SMITH: I'm Audrey Smith.  I do have a slight hearing

22  problem, but when people speak loud enough I can hear them.  But a lot of

23  times it's like a little muffled.

24           THE COURT: You don't have any trouble hearing me, do you?

25           MS. SMITH: No, sir.

1     THE COURT: Well, if you're selected on this jury, you're going

2 to be seated over here where these jurors are, and all the witnesses are

3 going to be testifying right here next to you, and all the lawyers are going to

4 be speaking from this podium here with a microphone on it.  If that's the

5 case, would you be able to hear all right?

6     MS. SMITH: Yes, sir.

7     THE COURT: All right, you may have a seat, please, ma'am.

8 Anyone else have an answer to that question?

9     [NOTE: No further responses.]

10     THE COURT: Do any of you now or have you ever worked for

11 the United States Government.  On the back row, yes, sir.

12     COURT SECURITY OFFICER: Stand up, sir.

13     MR. GERDES: Mr. Randy Gerdes, military.

14     THE COURT: Are you still in the military?

15     MR. GERDES: No, sir.

16     THE COURT: When were you discharged?

17     MR. GERDES: '91.

18     THE COURT: Thank you, sir.  Anyone else on that row?  Yes,

19 ma'am?

20     MS. BANKS: Military. Discharged.

21     THE COURT: When were you discharged?

22     MS. CAPERS: 1994.

23     THE COURT: Thank you, ma'am.  On this next row here.  Yes,

24 sir?

25     MR. FOLKER: Michael W. Folker.  I work for the U.S. Postal

-29-

1    Service as a rural letter carrier.  I'm still employed.

2    THE COURT: Thank you, Mr. Folker.  Out on the back row

3    here, yes, sir?

4    DR. BURRAN: William Burran, military.  I was discharged in

5    '94, and Department of Defense, retired last year.

6    THE COURT: Thank you, sir.  Anyone else on that row?  Yes,

7    sir?

8    MR. INGLETT: Wyman Inglett.  I was in the service, and was

9    discharged in 1970.

10    THE COURT: In '70?

11    MR. INGLETT: Yes ,sir.

12    THE COURT: Thank you.  Was there anyone else who had an

13    answer to that question?  On the back row, yes, sir?

14    MR. FORTSON: Leon Fortson.  I work for the City of Savannah.

15    THE COURT: For the City of Savannah, not the United States.

16    MR. FORTSON: No.

17    THE COURT: Okay.  Yes, sir?

18    MR. FORNEY: Derwin Forney, retired, U.S. Army, 1994.

19    THE COURT: Thank you, sir.  Anyone else have an answer to

20    that question?

21    [NOTE: No further responses.]

22    THE COURT: Do any of you now receive any form of

23    compensation from the United States Government.  I'm not talking about

24    the State of Georgia, now, but do any of you receive any compensation from

25    the United States Government, such as social security, or welfare, or any

-30-

1        other compensation that you receive from the United States Government.

2        Yes, ma'am?

3                    MS. BANKS: I receive disability compensation from the

4        Department of Veteran's Affairs.

5                    THE COURT: You need to give us your name, ma'am.

6                    MS. BANKS: Beverly Banks.

7                    THE COURT: Thank you, Ms. Banks.  Anyone else?  Yes,

8        ma'am?

9                    MS. PORTER: Barbara Porter, social security.

10                   THE COURT: Thank you, Ms. Porter.  Yes, ma'am?

11                   MS. MOSS: Jacqueline Moss, social security.

12                   THE COURT: Thank you.  Yes, sir?

13                   DR. BURRAN: William Burran, social security and military

14       retirement.

15                   THE COURT: Thank you.  Yes, sir.

16                   MR. INGLETT: Wyman Inglett, social security.

17                   THE COURT: Thank you, sir.  Yes, ma'am, on the front row

18       here?

19                   MS. SMITH: Social security – I mean, widow's support.

20                   THE COURT: You need to give us your name, ma'am.

21                   MS. SMITH: Audrey Smith, I'm sorry.

22                   THE COURT: Thank you, Ms. Smith.  I believe I see a hand on

23       the back row here?

24                   MR. FORNEY: Yes, sir.  Derwin Forney, disability

25       compensation, military retirement.

-31-

1        THE COURT: Thank you, sir.  Anyone else need to answer that

2   question?

3        [NOTE: No further responses.]

4        THE COURT: Ladies and gentlemen, do any of you now have,

5   or have you had in the past, or do you have some future claim that you're

6   thinking about making against the United States Government?  Have any of

7   you been involved in any litigation where you've had a claim against the

8   government, or any future claim that you're thinking about making against

9   the government?

10       [NOTE: No responses.]

11       THE COURT: Now, in just a moment I'm going to ask you some

12  questions, and I'm going to be using the term "close personal friend."

13  When I say close personal friend, I don't mean someone that you just know

14  casually.  You know, some casual acquaintance that you have at church, or

15  some casual acquaintance that you have at a health club that you might go

16  to, or some casual acquaintance that you know in your neighborhood.

17  That's not what I'm talking about.  When I say a close personal friend, I

18  mean someone that you consider to be a close personal friend of yours that

19  you communicate with regularly, that you see regularly, that you have some

20  close personal relationship with other than just a casual acquaintance that

21  you say hello to in the grocery store or something.  So when I say close

22  personal friend, that's what I mean.

23       Now, do any of you have any relatives, or any close personal

24  friends, who work in the field of law enforcement?  On the back row, yes,

25  ma'am.

1                MS. THORNTON: April Thornton, [inaudible] for Effingham

2    County.

3                THE COURT: You'll have to speak a little louder.

4                MS. THORNTON: April Thornton, brother, correctional officer

5    for Effingham County.

6                THE COURT: A correctional officer.

7                MS. THORNTON: Yes.

8                THE COURT: Thank you, ma'am.  On the front row here, yes,

9    sir.

10                MR. NILE: Curtis Nile.  I have a daughter that is a correctional

11    officer at a youth detention center in Columbus, Georgia.

12                THE COURT: Thank you, sir.  Yes, sir?

13                MR. CLEMENTS: Benjamin Clements.  I have a cousin that's

14    law enforcement, game warden in the Atlanta area.

15                THE COURT: In Atlanta?

16                MR. CLEMENTS: Yeah.

17                THE COURT: Thank you.  On the front row here, yes, sir?

18                MR. SCOTT: I'm Steve Scott. I got a cousin who's a lawyer,

19    Brian Cornell (phonetic).

20                THE COURT: He's a lawyer?

21                MR. SCOTT: Yes, sir.

22                THE COURT: Well, is he a prosecutor, or is he just a lawyer?

23                MR. SCOTT: He's just a lawyer, I guess.

24                THE COURT: Okay.  Well, I don't think – I think lawyers have

25    certain duties, but one of them is not as law enforcement officers.

1          MR. SCOTT: Okay.  Sorry about that.

2          THE COURT: Yes, sir?

3          MR. INGLETT: Wyman Inglett.  I have a brother-in-law that's

4     an officer at Garden City Police Department.

5          THE COURT: Thank you.  I saw a hand on the back back there.

6     Yes, sir?

7          MR. HAYES: Mark Hayes.  I have a brother that's chief of police

8     at Savannah State.

9          THE COURT: Thank you , sir.  Anyone else?  On the back row

10    here, yes, sir?

11         MR. FRAME: Jeffrey Frame.  A close personal – I was a

12    detention officer in Washington County, Tennessee.  I know pretty much

13    the entire jail and keep in touch with them regularly.

14         THE COURT: In Tennessee.

15         MR. FRAME: Yes, sir.

16         THE COURT: Thank you, sir.  Does anyone else have an answer

17    to that question?

18         [NOTE: No further responses.]

19         THE COURT: Have any of you ever appeared as a witness or a

20    party in any court proceeding either before a grand jury or a trial jury, or

21    where a judge was trying a case without a jury.  And I'm not asking you,

22    now, if you've ever had to go down to traffic court for a traffic violation.  But

23    any of you ever been a party – that is, one party to the case – or a witness

24    before a grand jury or a trial court.  On the front row here, yes, sir.

25         MR. HAYNES: Willie Haynes.  In 1986 I appeared as a witness,

-34-

1    grand jury, in Statesboro.

2                    THE COURT: In Statesboro?

3                    MR. HAYNES: Yes, sir.

4                    THE COURT: Excuse me.  You were a witness called in that

5    case to testify?

6                    MR. HAYNES: Yes, sir.  I reported a child molestation, and so

7    basically I was ....

8                    THE COURT: So they called you as a witness.

9                    MR. HAYNES: Yes, sir.

10                    THE COURT: Thank you.  Yes, sir.

11                    MR. FRYER: Kevin Fryer.  I was on a jury in '98.

12                    THE COURT: I'm not asking you about jury service.  I'm asking

13   you if you personally were ever a witness or a party.  Excuse me, what is

14   your answer?

15                    MR. FRYER: I'm sorry, what?

16                    THE COURT: Have you ever been a witness or a party?

17                    MR. FRYER: No.

18                    THE COURT: Thank you, sir. Yes, ma'am?

19                    MS. MOSS: Jacqueline Moss, a child custody case.

20                    THE COURT: You testified as a witness?

21                    MS. MOSS: I did.

22                    THE COURT: Thank you, ma'am.  Ladies and gentlemen, are

23   there – oh, yes, sir?

24                    MR. SANDERS: Cuyler Sanders, witness.

25                    THE COURT: What is your name?

-35-

1          MR. SANDERS: Cuyler Sanders.

2          THE COURT: And were you a witness in a case?

3          MR. SANDERS: A witness.

4          THE COURT: Thank you, sir.  Ladies and gentlemen, is there

5    any one of you who does not believe in a trial by jury under our judicial

6    system?  In other words, are there any of you that feel that a person should

7    not be entitled to a trial by jury?

8          [NOTE: No responses.]

9          THE COURT: If you're selected as a juror in this case, it will be

10   your duty to render a fair and an impartial verdict based upon the evidence

11   presented in this courtroom, and the law as it pertains to this case as you

12   will be instructed by the Court.  Is there anyone who feels that you cannot

13   follow that instruction?

14         [NOTE: No responses.]

15         THE COURT: In this case the government has the burden of

16   proving a defendant's guilt beyond a reasonable doubt.  There's a

17   presumption of innocence in criminal trials.  As the defendant sits before

18   you now he is presumed innocent of the charges, and this presumption of

19   innocence follows the defendant throughout the trial.  Is there anyone who

20   believes that the defendant is guilty as he sits here right now?

21         [NOTE: No responses.]

22         THE COURT: Is there any one of you who would not require the

23   government to comply with its burden of proof beyond a reasonable doubt,

24   or who does not agree with that principle of law?

25         [NOTE: No responses.]

1    THE COURT: The law requires that you base your verdict on

2 the facts as you find the facts to be from the evidence.  The law does not

3 permit you to consider any emotion such as sympathy, or prejudice, or

4 hostility, or fear.  Is there anyone who feels that he or she cannot put your

5 personal emotions out of your mind when deliberating upon the evidence

6 in this case?

7    [NOTE: No responses.]

8    THE COURT: Do any of you have any particular bias or

9 prejudice about government agents, or police officers, or prosecutors, or

10 defendants, or defendants' lawyers, that in any way could influence your

11 consideration of this case?

12    [NOTE: No responses.]

13    THE COURT: Now, our law provides that a defendant does not

14 have to testify in any criminal case.  It is the government's burden to prove

15 the defendant guilty of the charges contained in the indictment beyond a

16 reasonable doubt.  The defendant does not have to prove anything.  Is there

17 any member of this jury panel who is unable to follow that principle of law?

18    [NOTE: No responses.]

19    THE COURT: Is there any member of this panel who feels that

20 a defendant's failure to testify is an indication of his guilt?

21    [NOTE: No responses.]

22    THE COURT: Has any member of this panel ever received any

23 special training in law enforcement?

24    [NOTE: No responses.]

25    THE COURT: Is there any member of this jury panel who has

1   ever received any special legal training?  In other words, have you gone to

2   law school, or gone to school to be a paralegal, or received some other

3   special legal training that you might have received through your

4   employment?  Yes, sir?

5                MR. SILVER: May it please the Court, Murray Silver, Jr.  I hold

6   a juris doctor degree from a now defunct night school in Atlanta.

7                THE COURT: Thank you, Mr. Silver.  Anyone else?

8                [NOTE: No further responses.]

9                THE COURT: Is there any member of this panel who has ever

10   received any special medical training?  In other words, have you gone to

11   medical school to be a physician, have you gone to school to be a nurse, or a

12   PA, or any special medical training that you have received by any school

13   that you have attended, or through your employment.  Yes, ma'am?

14                MS. BANKS: Beverly Banks.  I was a combat medic in the

15   United States Army.

16                THE COURT: Thank you, Ms. Banks.  Anyone else in the panel

17   here?  Yes, sir?

18                DR. BURRAN: William Burran.  I'm a physician, retired.

19                THE COURT: You're a retired physician?  Where did you go to

20   school, sir?

21                DR. BURRAN: University of Mexico, and Baylor University

22   graduate school and medical school.

23                THE COURT: Did you practice medicine or – I know you

24   worked for the government at one time, you've said that.  Were you a

25   government physician?

-38-

1    DR. BURRAN: I was in private practice for 25 years, and just

2    the last few years worked for the Department of Defense.

3    THE COURT: Thank you, sir.  Anyone else have an answer to

4    that question?

5    [NOTE: No further responses.]

6    THE COURT: Ladies and gentlemen, has any member of this

7    panel ever worked in a medical clinic, or a medical office, or a hospital, or

8    have you ever worked in a nursing home, or any other healthcare facility?

9    Yes, ma'am.

10    MS. BANKS: I worked in a medical center in Germany while on

11    active duty.

12    THE COURT: Thank you.  You need to give us your name again.

13    MS. BANKS: Beverly Banks, sorry.

14    THE COURT: Yes, ma'am, on the back row?

15    MS. ANDREWS: Eboni Andrews.  I worked at Beaufort

16    Memorial Hospital.

17    THE COURT: You worked at Beaufort Memorial Hospital?

18    MS. ANDREWS: Yes, sir.

19    THE COURT: What were your duties there?

20    MS. ANDREWS: I was a healthcare coordinator.

21    THE COURT: Did you hear that?

22    MR. KNOCHE: I did not, I'm sorry.

23    MS. ANDREWS: Healthcare coordinator.

24    THE COURT: Thank you, ma'am.  Yes, ma'am, on the back

25    row?

-39-

1    MS. CAPERS: Toni Capers.  I worked at St. Joseph's Hospital.

2    THE COURT: And what were your duties there?

3    MS. CAPERS: Unit secretary.

4    THE COURT: A secretary?

5    MS. CAPERS: (Indicating affirmatively)

6    THE COURT:  Thank you, ma'am.  Was there anyone else in the

7    panel?  Yes, ma'am?

8    MS. MOSS: I'm Jacqueline Moss.  I worked with doctors for

9    over 20 years.  I did medical insurance and office coordinator.

10   THE COURT: In private physicians' offices?

11   MS. MOSS: Private practice, yes.

12   THE COURT: Thank you, ma'am.  Yes, sir?

13   DR. BURRAN:  I worked at Enlo Hospital, Chico, California for

14   25 years.

15   THE COURT: Thank you.  Was there anyone else out here that

16   needed to answer that question?

17   [NOTE: No further responses.]

18   THE COURT: Ladies and gentlemen, is there any member of

19   this panel, or any of your relatives, to your knowledge, who has ever been

20   treated by a physician for chronic pain?  Yes, ma'am.

21   MS. FRAME: Stephanie Frame.  My husband has ankylosing

22   spondylitis, which requires treatment for chronic pain.

23   THE COURT: Thank you, ma'am.  Anyone else here?  Out here

24   in the audience?  Yes, sir?

25   MR. INGLETT: Wyman Inglett.  My wife had a auto accident

-40-

1    that left spinal adhesions and spondylitis.  She was under pain

2    management for about two years.

3              THE COURT: And how long ago has it been since ...

4              MR. INGLETT: It was 1995 when it was over, when she got ...

5              THE COURT: Thank you, sir.  Anyone else have an answer to

6    that question?  Yes, sir, on the row here.

7              MR. PROFFITT: Jonathan Proffitt.  My father's being treated

8    with Lasix eye surgery treatments.

9              THE COURT: You need to talk so Mr. Withers can hear you.

10             MR. PROFFITT: Jonathan Proffitt.  My father's being treated

11   for Lasix eye surgery treatments.

12             THE COURT: Thank you.  Yes, ma'am.

13             MS. CURTIS: Sandra Curtis.  My mother was treated for

14   chronic back pain about a year ago.

15             THE COURT: Thank you, ma'am.  Yes, sir?

16             MR. FORNEY: Derwin Forney.  My wife is currently going

17   through pain management here in Savannah with the neurosurgery

18   department.

19             THE COURT: Thank you, sir.  Yes, ma'am?

20             MS. LEHMAN: Elise Lehman.  I've been being treated for about

21   the past 15 years for chronic pain.

22             THE COURT: Thank you, ma'am.  Ladies and gentlemen, do

23   any of you, or any family member of yours, to your knowledge, have you

24   ever, or they ever, become addicted to a prescription medication?  Or do

25   you believe that you or any of your family members have ever become

-41-

1    addicted to a prescription medication?  Yes, ma'am.

2              MS. BANKS: Beverly Banks.  My younger brother was addicted

3    to Percocet due to sickle cell anemia.

4              THE COURT: Because of his illness with sickle cell anemia?

5              MS. BANKS: Yes, sir.

6              THE COURT: Thank you, ma'am.  Anyone else?

7              [NOTE: No further responses.]

8              THE COURT: Ladies and gentlemen, have any of you or any

9    family member of yours ever brought a lawsuit against a doctor, or any

10   other type of medical professional?

11             [NOTE: No responses.]

12             THE COURT: The government in this case is represented by the

13   United States Attorney's office for the Southern District of Georgia.  The

14   United States Attorney in this district is Mr. Ed Tarver.  Mr. Knoche and

15   Mr. Gilluly are Assistant United States Attorneys in that office.  There are

16   numerous lawyers that work as Assistant United States Attorneys in that

17   office, and there are other office personnel.  Do any of you have any social

18   or business relationship with any of the people that work in the United

19   States Attorney's Office?

20             [NOTE: No responses.]

21             THE COURT: To your knowledge, have any of you or any of

22   your family members had any personal dealings with the United States

23   Attorney's Office, the Drug Enforcement Administration, sometimes

24   referred as the DEA, the Georgia Bureau of Investigation, or the Chatham-

25   Savannah Counter Narcotics Team?

1           [NOTE: No responses.]

2           THE COURT: Ladies and gentlemen, are there any of you who

3    would tend to believe the testimony of an agent or a police officer over and

4    above the testimony of a private citizen merely because of the officer's

5    position?  I like to ask that question another way:  If a police officer takes

6    the witness stand and says the light was red, but a private citizen takes the

7    stand and says, oh, no, the light was green, would you believe the officer's

8    testimony over and above the testimony of the private citizen just because

9    the person testifying was an officer?

10          [NOTE: No responses.]

11          THE COURT: Now, each of you ladies and gentlemen at the

12   Court's direction has been given a sheet of paper, and on that sheet of

13   paper you're asked some questions about you personally, and your family.

14   And in a few moments we're going to have you stand and give us the

15   information that's on that sheet of paper.

16          Now, we'll start with Ms. Banks here in the back, we'll go across

17   that row and come down to this gentleman and go across.  And then we'll

18   do what we've been doing.  And we're going to ask you to stand and in a

19   loud, clear voice give us the information, and speak slow enough and loud

20   enough that Mr. Withers out here on the end can hear you.

21          Now, we've been here for a good little while this morning, so

22   I'm going to give you a brief recess.  But before we take this recess, I want

23   you to look at where you're sitting – even those of you who were

24   summonsed here this morning but not in this panel right now – look at the

25   person on your right, look at the person on your left.  And when we come

1    back from this recess, I want you to be seated in the exact same place that

2    you're seated now.  So hopefully this recess won't last more than about five

3    or ten minutes, but we're going to take a brief recess, and when we come

4    back we will proceed with the questions on that piece of paper.

5            [NOTE: A brief recess is taken, after which the proceedings are

6    continued as follows:]

7            THE COURT: All right, we're going to start with you, ma'am.

8    And, again, let me emphasize to you, please speak in a loud, clear voice,

9    and don't talk so fast that we can't understand you.  It's nothing to get

10   nervous about.  We've done this for years and years, and we've never once

11   lost a juror, not a single time.  So just speak up loudly and give us the

12   information, please.  Yes, ma'am?

13           MS. BANKS: My name is Beverly Banks.  I live in Hinesville,

14   Georgia.  I've been there for 22 years.  I've been in the Southern District for

15   22 years.  I am a teacher.  I'm married.  My husband works Department of

16   Veteran's Affairs as a serviceman coordinator.  I have one daughter that's

17   24.  She is a supervisor for the Bibb County Animal Control office.  I have a

18   master's degree.  I am – served in the United States Army as a combat

19   medic, a nuclear biological chemical instructor.  I was battalion company

20   NCO and a platoon sergeant.  And I've never been on jury duty.

21           THE COURT: Let me stop you a minute before you sit down.  I

22   neglected to tell you that while you're standing I allow the lawyers to ask

23   some brief follow-up questions, if they've got any.  Usually they don't have

24   any, because by the time I've asked you all the questions I've asked, and by

25   the time you've given us the information on that sheet of paper, there's no

-44-

1    follow-up question that they need to ask you.  But if there is any brief

2    follow-up question, then I allow the lawyers to do it at this time.  And y'all

3    will have to let me know if you've got any follow-up questions.

4              All right, thank you, ma'am.  Yes, sir?

5              MR. JOHNSON: My name is Marcus Johnson.  I reside in the

6    city of Savannah, have for the past 23 years.  I've lived in the Southern

7    District for 23 years.  I'm a warehouse worker.  Not married, no children.

8    High School diploma.  No previous military service, and no previous jury

9    service.

10             THE COURT: Yes, sir?

11             MR. GERDES: My name is Randy Gerdes.  I live in Rincon,

12   Georgia.  I've lived there for 15 years.  I've resided in the Southern District

13   for 22 years.  I work at Gulfstream as a computerized maintenance

14   program analyst.  I am divorced.  I have no children.  A high school

15   diploma.  I served in the United States Marine Corps until '91.  My duties

16   were a turbo prop engine mechanic.  I have not served any previous jury

17   service.

18             THE COURT: Yes, ma'am.

19             MS. ANDREWS: My name is Eboni Andrews.  I've lived in

20   Savannah, Georgia for 31 years.  I've lived in the Southern District of

21   Georgia for 31 years.  I am a healthcare coordinator.  I'm single, no

22   children.  I have a bachelor's degree.  No previous military experience, and

23   no previous jury service.

24             THE COURT: Thank you.  Yes, ma'am?

25             MS. FRITTS: My name is Lynn Fritts, and I've lived in the city

1    of Savannah for the last ten years.  I've lived in the Southern District for 15

2    years – excuse me, ten years.  I'm a Realtor.  I am divorced.  I have two

3    children.  My son is 33, he works for Byrd Cookie Company.  My daughter

4    is 28 and she works at Southside Fire Department.  Three years of college.

5    No military service.  I have served on a grand jury in Cheshire County, New

6    Hampshire, and I've also served on the Chatham County jury for a civil

7    case.

8                    MR. WITHERS: Brief follow-up, Your Honor?

9                    THE COURT: Yes, sir.

10                   MR. WITHERS: Ms. Fritts, I'm not trying to embarrass you.

11   Are you in the real estate sales?

12                   MS. FRITTS: Yes, I'm a Realtor.

13                   MR. WITHERS: And who is your employer?

14                   MS. FRITTS: Coldwell Banker Platinum Partners.

15                   MR. WITHERS: Thank you, ma'am.

16                   THE COURT: Yes, ma'am.

17                   MS. CAPERS: My name is Toni Capers.  I live in Savannah area.

18   I've been here for 31 years.  I've stayed in the Southern District for 31 years.

19   I'm a teacher.  I'm single.  I have two children, 7 and 12.  I have a high

20   school diploma, no military experience, and I have served as a Chatham

21   County juror.

22                   THE COURT: Thank you.  Yes, ma'am?

23                   MS. FRAME: My name is Stephanie Frame.  I live in Savannah.

24   I've been in this district for 25 years.  I've lived in Savannah for 25 years.

25   I'm a teacher.  I'm married.  My husband is a restaurant manager.  I have

-46-

1    three children, 16, 12 and 11.  I have a master's degree.  I've never served in

2    the military, and I've served on jury duty here in Chatham County for a

3    criminal case.

4                    THE COURT: Thank you.  Yes, sir.

5                    MR. CLEMENTS: My name is Benjamin Clements.  I live in

6    Rincon, Georgia.  I've lived there for 25 years.  I've lived in the Southern

7    District for 38 years.  I'm in plumbing sales here in Savannah.  I am

8    married.  My wife is a nurse.  I have two children, a daughter 17 and a son

9    22.  He is a truck driver.  I've never been in the military, and this is the first

10   time as a juror.

11                   THE COURT: Thank you.  Yes, ma'am.

12                   MS. PORTER: My name is Barbara Porter.  I've lived in the city

13   of Savannah for 40 years, in the district 69 years.  I'm a school bus driver.

14   I'm divorced.  I have two children.  My daughter is 46, she works for the

15   City of Savannah.  My son's 47, he works for Fed Ex.  And I have never been

16   in the service.  I served on a jury, criminal case, and it was a verdict

17   returned.

18                   THE COURT: Thank you, yes, sir.

19                   MR. MEEKS: My name is Daniel Meeks.  I live in Eden,

20   Georgia.  Been there for two years.  Been in the Southern District for 27

21   years.  I'm married.  My wife is a nurse.  I have one step-daughter that's six

22   years old.  I got a high school diploma.  Never been in the military, and

23   never served as a juror.

24                   THE COURT: Thank you.  Yes, sir.

25                   MR. VETTER: My name is Thomas Vetter.  I live in Savannah.

-47-

1    I've lived here ten years.  I've lived in the Southern District for ten years.  I

2    work in commercial real estate in property management leasing and

3    construction.  I'm married.  My wife is a yoga instructor.  I have two

4    children, ages 9 and 12.  I have a bachelor's in history.  I've not had any

5    previous military service, and I have not served on a jury.

6              THE COURT: Thank you.  Yes, sir?

7              MR. FOLKER: I'm Michael W. Folker.  I live in the Midway

8    area, which is Liberty County, Georgia, and I've lived there for 25 years.  I

9    lived in the Southern District of Georgia for 53 years.  I'm a rural letter

10   carrier for the U.S. Postal Service.  I'm divorced.  I have one child, he is 29

11   years old and unemployed at this time.  And I have high school and some

12   college.  No military, and I served on a jury in the state court, and also I was

13   called for jury duty in federal court here, but I was not selected [inaudible].

14             THE COURT: Yes, sir?

15             MR. NILE: My name is Curtis Nile.  I reside in Richmond Hill,

16   Georgia.  Been there for 14 years.  Been in the Southern District for 14

17   years.  I'm a store manager at Harbor Freight Tools.  Married, my wife is a

18   teacher in Hinesville.  I have four children, 28, 26, 24 and 23.  One's a store

19   manager, one is a computer technician for the school system of Manville,

20   New Jersey, one is a service manager at a auto dealer, and the other one is

21   a correctional officer in Columbus, Georgia.  I have never had any – oh, I

22   have a high school education, and I have never been in the military, and

23   never done any jury duty.

24             THE COURT: Thank you.  Yes, ma'am.

25             MS. MOSS: My name is Jacqueline Moss.  I've lived in Guyton,

1   Georgia for two years. I've lived here 69½ years. I am married. My

2   husband worked for Southern Bell for 40 years. I have two children, 41 and

3   38. 41 is in sales, my younger son is a minister. I have a high school

4   education. Never served in the military, and I've served on civil and

5   criminal juries, and a verdict was reached on both of them

6                   THE COURT: Thank you. Yes, sir, Doctor?

7                   DR. BURRAN: My name is William Burran. I reside in

8   Georgetown. I've lived in the Southern District for seven years. I've lived

9   in Georgetown for seven years. I'm a retired physician. I am married. I

10  have two children. One daughter, 40, a nurse. My son, 37, works for a

11  national security agency. I have an M.D. degree. I'm retired military. I've

12  worked both in military intelligence and medicine in the U.S. Army. I have

13  not had any previous jury service.

14                  MR. PROFFITT: My name is Jonathan Proffitt. I live in Pt.

15  Wentworth, Georgia, been there for three years. Been in the Southern

16  District for 20 years. I am a exterior technician at Gulfstream Aerospace. I

17  am married. My wife is data technical associate I at Gulfstream Aerospace.

18  I have two step-children ages 10 and 9, and one on the way. High school

19  diploma. Two years of education at Savannah State. No military and no

20  jury service.

21                  THE COURT: Thank you. Yes, sir.

22                  MR. INGLETT: My name is Wyman Inglett. I live in Savannah.

23  I've lived in Savannah for 15 years. I've been in the Southern District for 30

24  years. I'm a Realtor. I'm married. My wife is disabled, and she's retired as

25  a television account executive. And I have no children. I have one step-

-49-

1    daughter, she's 36, and is a dispatcher for 911 in Bryan County.  I've got a

2    Bachelor's Degree in Science.  I was in the Marine Corps back in '60s, I got

3    out in 1970.  I was truck mechanic there.  I have had several civil cases, and

4    a couple of criminal cases, and we've reached verdicts.

5                THE COURT: Thank you, sir.  Yes, sir?

6                MR. HAYNES: My name is Willie Haynes.  I reside in Rincon.

7    I've been there 23 years.  I've been in the Southern District 23 years.  I am a

8    teacher.  I have been teaching engineering technology for 26 years.  I am

9    married.  My wife is currently unemployed.  I have four children.  My

10   daughter 36 is in nursing school.  I have a 21 year old who works at Sam's

11   in Pooler.  I have a 20 year old that's currently unemployed, and a 15 year

12   old that's a freshman at South Effingham High School.  I have a education

13   specialist degree.  I have been in the Marine Corps.  I left the Marine Corps

14   in 2002 after 23 years of service.  I was a logistics officers and an

15   operations and training officer.  And I have served on jury duty, civil case in

16   Effingham County, and we did return a verdict.

17               THE COURT: Thank you, sir.  Yes, sir?

18               MR. SCOTT: I'm Steve Scott.  I've lived in Clyo, Georgia for

19   nine years.  I've lived in the southern state for 58.  I'm a heavy equipment

20   operator at Plant Vogtle.  Married.  My wife is a homemaker.  I have two

21   kids.  One's 38, he works for SignMart, builds signs.  And my daughter is

22   34, she's a desk clerk manager.  Got a high school education.  Never been in

23   the military, and I served grand jury in Effingham County.

24               THE COURT: Thank you, sir.  Yes, ma'am?

25               MS. SMITH: I'm Audrey Smith.  Been in Savannah 53 years.

1    Been in the Southern District of Georgia all of my life.  I'm a

2    paraprofessional at Chatham County Board of Education.  I'm a widow.  I

3    have one daughter who lives in Atlanta, she's an insurance adjuster.  I have

4    three years of college, no military experience, and I have been on several

5    civil cases and there was a verdict returned.

6              THE COURT: Thank you, ma'am.  Yes, sir?

7              MR. FRYER: My name is Kevin Fryer.  I live on Tybee Island.

8    I've been there for five years.  I've been in the Southern District of Georgia

9    for the last 17.  I'm an engineer.  I'm divorced.  I have a 13-year-old

10   daughter.  I have a bachelor's degree.  No military service, and I was on a

11   Chatham County jury for a criminal case in which a verdict was reached.

12             THE COURT: Thank you, sir.  Yes, sir?

13             MR. SANDERS: My name is Cuyler Sanders.  I live in Rincon,

14   Georgia.  Been in the Southern District for 30 years, lived in Rincon 30

15   years.  I'm single.  I have two kids, two daughters, 11 and 10.  I work at

16   Gulfstream, and a high school education.  Never been in the military, never

17   served on the jury.

18             THE COURT: Thank you.

19             MR. WITHERS: If I could just follow up very quickly, Your

20   Honor.  Sir, what do you do at Gulfstream?  What kind of work do you do?

21             MR. SANDERS: Handle materials.

22             THE COURT: Thank you.  Yes, sir.

23             MR. SILVER: May it please the Court, my name is Murray

24   Mendel Silver, Jr.  I am a resident of the city of Savannah.  I was born here

25   in 1953.  I moved to Atlanta in 1966, returned to Savannah 1998.  I am the

1    author of six books.  I am married to a Brazilian who is a book publisher.  I

2    have no children.  I have a juris doctor degree, 1975, Woodrow Wilson.  I

3    have no military service experience.  I've had no previous jury service, but

4    I've spent a whole lot of time in the courtroom.

5                    THE COURT:  Thank you, Mr. Silver.  Yes, sir.

6                    MR. FOSTON:  Leon Foston.  Lived in the city of Savannah for

7    19 years, Southern District for 19 years.  I'm a medium equipment operator

8    for the City of Savannah.  Married.  My wife is a teacher.  Two kids, 6 and 3.

9    Education, twelfth grade.  No military experience, and no jury service.

10                    THE COURT:  Thank you.  Yes, sir.

11                    MR. HAYES:  My name is Mark Hayes.  I lived in the city of

12    Savannah for 55 years.  Lived in the region for 55 years.  I'm self-employed,

13    I'm a carpenter.  I'm married.  My wife works at – she's a teacher.  I've

14    never been in the military.  I've served on the grand jury.

15                    THE COURT:  Thank you, sir.  Yes, ma'am.

16                    MS. THORNTON:  My name is April Thornton.  I live in Rincon,

17    Georgia.  Lived there for six years.  Lived in the Southern District for 31

18    years.  I'm a preschool teacher.  Marital status is divorced.  I have two

19    children, a 6 and 8 year old.  Education is associate degree.  No military,

20    and have never been on jury service.

21                    THE COURT:  Thank you.  Yes, sir.

22                    MR. LIGHTSEY:  My name is Jeremy Lightsey.  I live in

23    Savannah.  Lived in this district for 14 years, and been in Savannah 14

24    years.  I'm an engineering project manager for AT&T.  Married.  My wife is

25    a nurse.  We have two kids, ages 4 and 1.  I have a master's degree.  No

-52-

1    military service, and no prior jury service.

2                    THE COURT: Thank you.  Yes.

3                    MS. CURTIS: My name is Sandra Curtis.  I've lived in

4    Richmond Hill for 24 years.  I've been in the Southern District for 60 years.

5    I'm unemployed.  I retired as a retail customer service.  I am divorced.  I

6    have two children, a daughter that's 38 who is a Chatham County teacher;

7    My son works in industry on the westside.  The extent of my education is

8    high school diploma.  I have had no military service, and I've never served

9    jury duty.

10                    THE COURT: Thank you, ma'am.  Yes, sir.

11                    MR. FORNEY: Name is Derwin Forney.  I currently reside in

12   Hinesville, Georgia.  I been there for 14 years.  Been in the district for 14

13   years.  My current occupation, I'm a senior analysis for General Dynamics

14   working out of Ft. Stewart.  I am married.  My wife is disabled.  We have

15   three children, a daughter 35 who's in retail; a son 34, unemployed; and a

16   son 29 that works in the food industry.  I have some college.  I retired from

17   the military, from the Army as a artilleryman, and I've never been on the

18   jury.

19                    THE COURT: Thank you, sir.  Yes, ma'am?

20                    MS. LEHMAN: My name is Elise Lehman.  I live in Midway,

21   Georgia.  I've lived in the south for 14 years.  I've lived in the Southern

22   District since the year 2000.  I am married.  My husband is in retail.  I am

23   self-employed.  Previously I worked mainly in finance.  I have some college.

24   Never been in the military, and although summoned for jury duty a number

25   of times, never been chosen.

-53-

1          THE COURT: Thank you, ma'am.  Yes, ma'am?

2          MS. BEAN: My name is Kim Bean.  I've lived in Guyton,

3    Georgia for the last 33 years.  Lived in Southern Georgia for my whole life.

4    I'm married, and I have three kids.  My husband does paint and body work

5    on cars.  My kids are 36, 34 and 32.  One works at the railroad, one works

6    at the Georgia Ports Authority, and then the other one is a paint rep for

7    paint stores and all.  And I quit high school and got married, and I've never

8    served in the military, and I've never been jury duty.

9          THE COURT: Thank you, ma'am.  Yes, sir.

10          MR. FRAME: Jeffrey Frame.  I reside in Savannah.  I've lived in

11    – been in Savannah four years, lived in the Southern District for four years.

12    I'm an assistant manager at Bass Pro Shops.  I'm married.  My wife is a

13    physician at Memorial Health.  I have – my wife is pregnant.  I've got a

14    bachelor's degree.  No prior military service.  Been summoned for jury

15    duty, but never called.

16          THE COURT: Thank you.  Ladies and gentlemen, again, if

17    you're selected as a juror in this case, can and will each of you render a fair

18    and impartial verdict based upon the evidence presented in this courtroom,

19    and the law as it pertains to this particular case as you will be instructed by

20    the Court?

21          [NOTE: No adverse responses.]

22          THE COURT: Put another way, if you were the defendant on

23    trial today charged with the offenses in this case, would you be content to

24    have your case tried by a jury consisting of men and women of the same

25    frame of mind as you find yourself as you sit here today.

-54-

1    [NOTE: No adverse responses.]

2    THE COURT: The parties will now proceed to make their

3    peremptory challenges and silently select a jury to try this case.  Ms.

4    Bodaford?

5    CLERK: Yes, Your Honor.

6    [NOTE: Silent selection process takes place.]

7    CLERK: The silent striking is completed, Your Honor.

8    THE COURT: Ladies and gentlemen, those of you who are

9    seated in the jury box here, I'm going to ask you to briefly go back and have

10   a seat in the audience in the audience.

11   [NOTE: The jury box is emptied.]

12   THE COURT: When your name is called, please come forward

13   and have a seat in the jury box as you will be instructed by the officer.

14   CLERK: [Seated back row] Number 23, Marcus Johnson.

15   Number 18, Randy Gerdes.  Number 8, Toni Capers.  Number 15,

16   Stephanie Frame.  Number 35, Barbara Porter.  Number 44, Thomas

17   Vetter.  Number 11, Michael Folker. [Seated front row] Number 33, Curtis

18   Nile.  Number 20, Willie Haynes.  Number 13, Leon Foston.  Number 19,

19   Mark Hayes.  Number 43, April Thornton.  Number 12, Derwin Forney.

20   Number 4, Kimberly Bean.

21   THE COURT: I'll ask counsel for the government and counsel

22   for the defendant to look upon this jury and tell me whether you're satisfied

23   that this is the jury that you've selected to hear this case.

24   MR. KNOCHE: The government is satisfied.

25   MR. WITHERS: It is, Your Honor.

-55-

1       THE COURT: Ladies and gentlemen, if you would please stand,

2       I will ask the Clerk to administer your oath.

3       [NOTE: Jury Sworn]

4       THE COURT: Ladies and gentlemen, you're the jury that's now

5       been selected to hear this case.  In just a few moments I'm going to ask you

6       to step back in the jury room while I address those who were summonsed

7       here this morning but were not selected, and also take up a few preliminary

8       matters with the lawyers before we begin.  When we come back, I will give

9       you your preliminary instructions regarding your duties as jurors in this

10       case.  But one of the things that I will tell you is not to discuss this case with

11       anybody, and that even means don't discuss it among yourselves.  So when

12       you go back in the jury room, don't start talking about the case.  You can

13       talk about the ball game, or the weather, or politics, or whatever, but don't

14       discuss anything that has anything to do with this case.  And I'll tell you

15       many, many times before this case is over with, don't discuss it among

16       yourselves until the very end of the case.

17       So I'll excuse you to the jury room at this time.

18       [NOTE: Whereupon *voir dire* and jury selection are completed.

19       The Court dismisses panel members not chosen with the thanks of the

20       Court, and addresses and instructs three late jurors.]

-56-

STATE OF GEORGIA

CHATHAM COUNTY.


CERTIFICATE OF REPORTER


I, Marie Cowart, do hereby certify that the above and foregoing pages of typewritten material is a true, correct and complete transcript of the evidence and proceedings adduced in the Jury Trial stated in the captioned matter, this being Volume 1A of Volumes 1A, and 1 through 5.

This 18th day of September,  2014.



/s/ *Marie Cowart*

Marie Cowart, CCR B-237
United States Court Reporter
Southern District of Georgia
Savannah Division



P. O. Box 9572
Savannah, GA 31412
(912) 650- 4066